## 58109. COX et al. v. THE STATE.

CARLEY, Judge.

On November 4, 1977, the Superior Court of Fulton County was petitioned for an order authorizing the surveillance of one Robert Gwen Moseley "and other unknown persons" by tapping three telephone numbers. The stated purpose of the tapping was "to secure evidence and information with the view to prosecution of either of said persons who are committing said [gambling] offenses." Probable cause for this petition was supplied by an eleven-page affidavit of R. C. McClendon, an Atlanta police officer, setting forth with great particularity the basis for belief that Moseley was involved in illegal gambling activity. An order authorizing the interception of the conversations of Moseley and "other unknown persons" was entered and surveillance of the three telephone numbers was begun.

As the result of the Moseley tap, the existence of a wide-ranging illegal gambling ring was discovered. Over the next several weeks the original Moseley tap spawned a series of four subsequent wire tap petitions, probable cause for each succeeding tap being based upon evidence secured from the preceding one. This ever-widening web of surveillance eventually resulted in petitions seeking to intercept appellants' conversations. The petition in the first four instances was supported by essentially the same document, the affidavit of Officer McClendon, which materially differed in each instance only with regard to

the names of the interceptees and the target telephone numbers. The affidavit recited the issuance of the preceding tap order and stated that it had established that incriminating calls were placed to or received from the numbers for which authority to intercept was presently being sought. While specific authority to intercept appellants' conversations was sought, the sole references in the affidavits linking them to the criminal activity under investigation was that they were "known bookmaking figures" presently under investigation and "associates" of one another and, in the case of appellants Gaddis and Sams, were telephone subscribers to the target numbers.

The fifth and final tap was sought on the basis of Officer McClendon's affidavit that a prior authorized tap on Sams' telephone to intercept appellants' conversations "would be unproductive due to the fact that a telephone company employee, [appellant] Gentle, had possibly notified [Sams] of the surveillance." Further reciting facts to show probable cause to believe Sams was using another number to conduct illegal gambling activity, authorization was sought and obtained to tap that number and to intercept appellants' conversations.

Appellants were subsequently indicted for commercial gambling and pled not guilty. They moved to suppress all evidence obtained from the five taps. After a lengthy hearing this motion was denied. The evidence obtained by the taps was admitted and appellants were found guilty of commercial gambling. Appellants appeal, enumerating as error the denial of their motion to suppress.

1. In 1968 the Congress enacted the Omnibus Crime Control and Safe Streets Act, a portion of which dealt with the interception and disclosure of wire or oral communications. 18 USC § 2510 et seq. The Act set down procedures whereby federal authorities could secure an authorization for wire taps. It further provided for concurrent state regulation of wire taps subject, at the minimum, to the requirements of the federal legislation. "The principal prosecuting attorney of any State, or the principal prosecuting attorney of any political subdivision thereof, *if such attorney is authorized by a*

*statute of that State* to make application to a State court judge of competent jurisdiction for an order authorizing or approving the interception of wire or oral communications, may apply to such judge for, and such judge may grant in conformity with section 2518 of this chapter and with the applicable State statute an order authorizing, or approving the interception of wire or oral communications . . ." 18 USC § 2516 (2). (Emphasis supplied.) Georgia has enacted such a statute and the wire taps at issue in the instant case were made pursuant to this Georgia statute. Code Ann. § 26-3004. Which law, state or federal, controls? "[D]espite the fact that the interceptions were made pursuant to a state court authorization, at the very least the other requirements of Title III [of the Omnibus Crime Act] . . . must be satisfied. But whether the proceedings be federal or state, interpretation of a state wiretap statute can never be controlling where it might impose requirements less stringent than the controlling standard of Title III. If a state should set forth procedures *more* exacting than those of the federal statute, however, the validity of the interceptions and the orders of authorization by which they were made would have to comply with that test as well. [Cits.]" United States v. Marion, 535 F2d 697, 702 (2d Cir. 1976). See also, *Bilbo v. State,* 142 Ga. App. 716 (236 SE2d 847) (1977) (reversed on other grounds, 240 Ga. 601). Thus, "[w]iretapping and surveillance are the subjects of federal and state law and *both must be complied with where applicable.*" *Orkin v. State,* 236 Ga. 176, 179 (223 SE2d 61) (1976). (Emphasis supplied.) What this means is that in analysis of a state-authorized wire tap, one must begin with the applicable federal standards which set the minimum requirements for such surveillance. If these minimum requirements are not met, analysis need proceed no further and the wire tap must be held to be unlawful. Cf. *Cross v. State,* 225 Ga. 760, 763 (2) (171 SE2d 507) (1969). If, however, the federal standards are met, analysis must proceed under the applicable state law to determine if the state standards, which may be more stringent, are met. In other words, for evidence obtained through state-authorized wire taps to be admissible in a state criminal proceeding, it must have

been obtained in a manner not inconsistent with the requirements of *both* the federal and state laws. On the other hand, such evidence must be excluded if it was obtained in a manner inconsistent with the mandate of *either* the federal or the state law. Cf. *Cross v. State,* supra.

Appellants argue that the authorizations to tap here at issue are fatally defective under the federal statute because they were not issued on probable cause. "Each application for an order authorizing or approving the interception of a tap or oral communication shall be made in writing upon oath or affirmation to a judge of competent jurisdiction and shall state the applicant's authority to make such application. Each application shall include the following information: "a full and complete statement of the facts and circumstances relied upon by the applicant, to justify his belief that an order should be issued, including (i) details as to the particular offense that has been, is being, or is about to be committed, (ii) a particular description of the nature and location of the facilities from which or the place where the communication is to be intercepted, (iii) a particular description of the type of communications sought to be intercepted, (iv) the identity of the person, if known, committing the offense and whose communications are to be intercepted . . . Upon such application the judge may enter an ex parte order . . . if the judge determines on the basis of facts submitted by the application that — (a) there is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated . . .; (b) there is probable cause for belief that particular communications concerning that offense will be obtained through such interception; . . . (d) there is probable cause for belief that the facilities from which, or the place where, the wire or oral communications are to be intercepted are being used, or are about to be used, in connection with the commission of such offense, or are leased to, listed in the name of, or commonly used by such person." 18 USC § 2518 (1) (b), 3 (a), (b) and (d).

Without reiterating appellants' arguments as to each tap, suffice it to say that the basis for those arguments is that Officer McClendon's affidavits were, in

each instance and in some respect, not a "full and complete statement of the facts and circumstances relied upon" under 18 USC § 2518 (b) and that, therefore, the issuing magistrate could not have determined "on the basis of the facts submitted" by those affidavits that probable cause existed for the order to issue under 18 USC § 2518 (3).

We have carefully studied the affidavits and find them deficient in at least one respect. They refer to appellants in conclusory terms as "associates" and "known" bookmakers without any further evidence to support the conclusion that they were involved in criminal activities. We do not believe that on the basis of these affidavits alone, the issuing magistrates could have determined "probable cause for belief that [appellants are] committing, [have] committed, or [are] about to commit a particular offense." 18 USC § 2518 (3) (a). Compare United States v. Scott, 331 FSupp. 233 (D.C. D.C. 1971) (vacated on other grounds 504 F2d 194). The basis for this "conclusion" appears to be evidence obtained from the preceding taps. However, the subsequent affidavits did not set forth such evidence with any specificity. Compare United States v. Poeta, 455 F2d 117 (2d Cir. 1972) (cert. denied 406 U. S. 948); United States v. Armocida, 515 F2d 29 (3d Cir. 1975) (cert. denied 423 U. S. 858).

Nevertheless, the record indicates that *in addition* to the affidavits, the issuing magistrates questioned the petitioning officers as to probable cause and took their sworn oral testimony before authorizing the taps and considered both the affidavits and this oral testimony in determining probable cause. The magistrates themselves testified to this effect at the suppression hearing, even though they were not always able to recall with specificity the exact nature of the questions they asked or the additional oral testimony which was given. The officers, however, testified as to what evidence in addition to the affidavits was presented to the magistrates to establish probable cause. It is true that the value of such testimony by officers has been held to be questionable. *Riggins v. State,* 136 Ga. App. 279, 280 (220 SE2d 775) (1975). However, here, unlike *Riggins,* the issuing magistrates

did testify that they heard *sworn* testimony upon which they *did* rely in determining probable cause before the investigation warrants authorizing the use of surveillance devices were entered. Furthermore, *Riggins* merely declares such testimony to be "of questionable value" and does not hold the same to be inadmissible. We believe that the value of such testimony is enhanced when the issuing magistrates also testify that they received sworn oral evidence in determining probable cause, in addition to the affidavit, and that they relied upon that sworn evidence. There appears to be no reason why, after this groundwork is laid, the officers may not testify in the suppression hearing as to the specifics of their sworn oral evidence. Under these circumstances, the "totality of the sworn testimony" — whether oral or by affidavit — which was before the issuing magistrate is presented at the hearing on the motion to suppress and it may then be determined whether probable cause existed for the authorization to tap and whether that information was in fact given to the issuing magistrates. See, e.g., *Dailey v. State,* 136 Ga. App. 866 (1) (222 SE2d 682) (1975) and cits. Unlike *State v. Bradley,* 138 Ga. App. 800 (227 SE2d 776) (1976), relied upon by appellants, the record in the instant case does show that the magistrates based their determination of probable cause on sworn oral evidence in addition to the affidavits. We have considered the totality of the sworn evidence which was presented to the issuing magistrates in the instant case — oral testimony and affidavits — and conclude that probable cause existed for the wire tap orders in conformity with 18 USC § 2518.

Citing Rule 41 (c) of the Federal Rules of Criminal Procedure, several federal cases, and other authorities, appellants argue that in federal courts oral testimony presented to the issuing magistrate aliunde the affidavit may not be used to establish probable cause for the issuance of a wire tap order unless that testimony was recorded, preserved and made a part of the record for review. It is argued that since the federal wire tap law sets the minimum standards for issuance of such an order, the Georgia rule which would permit the affidavit to be augmented by unrecorded sworn oral testimony presented to the magistrate for his determination of

probable cause has no application in the instant case. Consequently, the argument is that since the oral "probable cause" testimony of the petitioning officers given before the issuing magistrates in the instant case was not recorded, the wire tap orders must stand or fail solely on the sufficiency of the affidavits. We do not agree. It is true that 18 USC § 2518 (1) requires an application "in writing" but subsection (2) of that act provides for an exception for "additional testimony": "The judge may require the applicant to furnish additional testimony or documentary evidence in support of the application." Appellants argue that this section must be construed in pari materia with § 41 (c) of the Federal Rules of Criminal Procedure which provides, inter alia: "Before ruling on a request for a warrant the [issuing magistrate] may require the affiant to appear personally and may examine under oath the affiant and any witnesses he may produce, provided that such proceeding shall be taken down by a court reporter or recording equipment and made part of the affidavit." In the first instance, it is clear that in the general search warrant context Federal Rule 41 (c) would not be applicable. ". . . Rule 41 (c), while applicable to the federal jurisdiction, has not been held to be a rule of constitutional dimension applicable to the states." Tabasko v. Barton, 472 F2d 871, 873 (6th Cir. 1972) (cert. denied 412 U. S. 908). Moreover, the quoted language from Rule 41 (c) is from the 1972 amendment to the Federal Rules. The Rule 41 (c) which was in effect in 1968 when the Omnibus Crime Act was passed (and with which 18 USC § 2518 must be construed in pari materia to determine the legislative intent of that section) contained vastly different language: "A warrant shall issue *only on affidavit* sworn to before the judge or commissioner and establishing the grounds for issuing the warrant." (Emphasis supplied.) See 327 U. S. 827, 863. Under this former rule all data necessary to show probable cause for issuance of a federal warrant had to be contained within the four corners of a written affidavit given under oath and the affidavit could not be supplemented by oral testimony. Tabasko v. Barton, supra; United States v. Anderson, 453 F2d 174 (9th Cir. 1971). Thus, contrary to appellants' assertions that 18 USC § 2518 (2) established

a more restrictive standard for what evidence could be considered, the statute was apparently a congressionally enacted *exception* to the then existing "four corners" rule and sought to *relax* the stringent standards established by the then existing Rule 41 (c). There is nothing in 18 USC § 2518 (2) which indicates that the additional testimony is *required* to be recorded as a prerequisite to admissibility on the determination of whether probable cause existed for the warrant to issue. The legislative history of this section addresses the issue in discretionary rather than mandatory terms. "The additional testimony need not be in writing, but it should be under oath or affirmation and a suitable record should be made of it. The use of a court reporter would be the best practice." U. S. Congressional & Administrative News, 1968 (90th Congress 2d Sess.), p. 2191. We do not take this to mean that absent such official recording, evidence aliunde the affidavit may not be admissible on the probable cause question; it merely suggests a procedure, it does not demand it. We are aware of no decision which holds that such a recording is a general constitutional requirement under the Fourth Amendment.

18 USC § 2516 (2) does not require that state wire tap statutes be carbon copies of the federal enactment. See, *Lawson v. State,* 236 Ga. 770 (225 SE2d 258) (1976) (cert. denied 429 U. S. 857, 429 U. S. 859). They must merely be "in conformity" with the federal law. It is clear that the applicable standard under *both* the federal statute and Code Ann. § 26-3004 is probable cause for the issuance of the order to tap. We find no reason why the Georgia rule, which would allow sworn but unrecorded oral testimony to show that sufficient evidence of probable cause was brought to the attention of the issuing magistrate, is not "in conformity with" 18 USC § 2518. The probable cause standard was met in the instant case.

2. Appellants next argue that the evidence obtained from the taps was "published" within the meaning of Code Ann. § 26-3004 (k) and that the tapes were, therefore, inadmissible. The security supervisor of Southern Bell was permitted to review the logs of intercepted conversations as part of his investigation into the alleged "tip-off" of appellant Sams by appellant

Gentle, a Southern Bell employee, that Sams' telephone was being tapped. This investigation resulted in a report "basically prepared for the use of our [Southern Bell] management people" and Gentle was fired.

"Any publication of the information or evidence obtained under a warrant issued hereunder other than that necessary and essential to the preparation of and actual prosecution for the crime specified in the warrant shall be an unlawful invasion of privacy under this Chapter, and shall cause such evidence and information to be inadmissible in any criminal prosecution." Code Ann. § 26-3004 (k). "We cannot agree with the interpretation impliedly urged by the defendants that 'necessary *and* essential' means 'indispensable,' i.e., only those publications so fundamentally required for criminal prosecutions that they cannot be avoided. Nor do we adopt the view that the state has unlimited discretion to use the recordings for any purpose arguably connected with trial preparation. The better view of the legislative intent involves a balancing of the opposing interests involved. It is unreasonable to believe that the legislature intended to allow for authorization of electronic surveillance in the investigation of criminal activity only to remove the ability to use the results of such surveillance in all but the most fundamental portions of trial preparation. Each case varies and the preparation necessary for each case varies. On the other hand, it would clearly defeat the purpose of protection of the private citizen to allow the issue of what is necessary and essential to be determined solely by the subjective beliefs of the prosecuting attorneys. The construction to be given the statute is rather what is reasonably necessary and essential to the preparation of and actual prosecution for a crime. What is reasonable will depend upon the facts of a given case and must necessarily rest in the controlled discretion of the district attorney, subject to review by the trial court." *Orkin v. State,* 236 Ga. 176, 189, supra.

"Any investigative or law enforcement officer who, by any means authorized by this chapter, has obtained knowledge of the contents of any wire or oral communication or evidence derived therefrom may use such contents *to the extent such use is appropriate to the*

*proper performance of his official duties."* 18 USC § 2517 (2). (Emphasis supplied.) Contrary to appellants' assertions, this federal statute does provide appropriate guidelines for determining, on review, whether publication was "necessary and essential" within the meaning of the Georgia statute. "We do not read the Georgia statutes as countermanding the specific authorization of the U. S. Congress [in USC § 2517]." *Morrow v. State,* 147 Ga. App. 395, 399 (249 SE2d 110) (1978).

The record reveals that appellant Gentle, by virtue of his employment with Southern Bell, had obtained information concerning the tap and had informed appellant Sams of the interception of his conversations. This frustrated the attempts of the law enforcement officers in their "official duties" to execute the tap pursuant to the court's authorization and to obtain evidence of the far reaching gambling conspiracy. As the direct result of this breach of security, appellant Sams stopped using his telephone and moved his base of operations, thus making it necessary that the prosecution obtain a new investigative warrant authorizing additional electronic surveillance. It is surely "appropriate to the proper performance of his official duties" for an officer to seek out and to eliminate the source of a "leak" in the very heart of the telephone company which was frustrating and jeopardizing "the preparation of and actual prosecution for the crime specified in the warrant." A holding to the contrary would allow the entire Georgia wire tap law to be frustrated while requiring officers whose official duties are to enforce the tap order to stand by helplessly. Surely, such a construction is not required in order to effect a "balancing of the opposing interests involved." We do not believe that the legislature envisioned Code Ann. § 26-3004 (k) as a shield behind which the very source of frustration to the proper performance of law enforcement could find protection by claiming that the elimination of that source of frustration was not "necessary and essential to the preparation of and actual prosecution for" the crime listed in the warrant. On the contrary, we hold that elimination of such a source, which in all probability would be a

continuing impediment to the proper performance of law enforcement in future investigations, was "reasonably necessary and essential." There was no error in overruling the motion to suppress for this reason.

3. Appellants also contend that unlawful publication occurred during the actual hearing on the motion to suppress. In corroboration of the testimony of the police officers as to the substance of the intercepted conversations they had orally related to the issuing magistrate in showing probable cause for the succeeding orders, the state offered to play the tapes for the court. Appellants objected on the ground that the tapes, not having been before the issuing magistrates, could not be considered by the judge at the suppression hearing. This objection was overruled and the tapes were played in open court.

"The construction to be given [Code Ann. § 26-3004 (k)] is rather what is reasonably necessary and essential to the preparation of and actual prosecution for a crime. What is reasonable will depend upon the facts of a given case and must necessarily rest in the controlled discretion of the district attorney, subject to review by the trial court. Where there is evidence to support the decision of a trial judge on motion to suppress evidence, that decision will not be disturbed on appeal. [Cits.]" *Orkin v. State,* 236 Ga. 176, 189, supra. At the hearing on a motion to suppress the burden of proof is upon the state to show what facts constituting probable cause existed and were presented to the magistrate before the warrant was issued. *Veasey v. State,* 113 Ga. App. 187 (147 SE2d 515) (1966); *Marshall v. State,* 113 Ga. App. 143 (1a) (147 SE2d 666) (1966). As discussed above, part of the state's burden in the instant case was met by testimony from the issuing magistrates and the petitioning officers as to what evidence outside of the affidavits was presented to show probable cause for the taps. A substantial portion of this testimony dealt with the contents of the prior intercepted conversations which broadened the scope of the gambling conspiracy investigation and gave probable cause to seek new taps on additional numbers and to intercept the conversations of additional persons. Also, as we have noted, such testimony has been held to be "of questionable

value." *Riggins v. State,* supra. In an effort to enhance the value of this testimony the state sought to corroborate the testimony by playing the tapes to demonstrate that facts showing probable cause, as testified to by the officers, indeed existed — though that those facts were brought to the attention of the magistrates remained for the determination of the veracity of the testimony of the officers and the magistrates by the judge hearing the suppression motion. Since the burden was on the state to show probable cause, since there was reliance upon what the preceding tapes had intercepted to show that probable cause existed for the issuance of succeeding orders to tap, since the officers and issuing magistrates had testified in varying degrees of exactitude as to what substance of the tapes had been orally related in securing subsequent orders, and since the tapes themselves were offered in partial corroboration of the state's witnesses in their testimony as to the facts going to probable cause, we believe that the state's decision to play the tapes and the court's determination to hear them was "reasonably necessary and essential to the preparation of and actual prosecution for a crime." Without demonstrating that probable cause existed for issuance of the surveillance warrants, there would be no evidence of the crime and hence no prosecution. Thus, under the circumstances existing in the instant case, the district attorney determined that corroboration of the state's witnesses by playing the tapes was "reasonably necessary and essential" in meeting the state's burden on the suppression hearing. The court's approval of such a course as "reasonable" was manifest by its decision to hear them. Since the circumstances of this case supported the state's solicitation of permission to play the tapes and the court's grant of such permission, we do not believe that playing the tapes can be found to be "unreasonable."

Appellants, however, further argue that at the time the tapes were played in open court several non-parties to the proceeding were in attendance and overheard the intercepted conversations. Appellants did not object to this until the day *after* it occurred and, as soon as it was brought to the court's attention, the courtroom was cleared of all persons without authority to be there.

Appellants argue that their general objection as to the playing of the tapes made on the first day the tapes were played, which we have found to be meritless under the circumstances, covered these unauthorized spectators as well and that even if there was no "publication" for the reasons urged on the first day there had yet been a "publication" because the court allowed unauthorized persons to overhear the tapes. We do not agree.

Appellants' argument fails to consider that their general objection on the first day was not the same as their specific objection on the second to the presence of others in the courtroom. The first day's objection addressed the propriety of playing the tapes *under any circumstances, before anyone,* i.e., it went to the tapes themselves. When this objection was overruled, appellants did not move to clear the courtroom of unauthorized spectators, though by the statement of their attorney made on the following day, it was clear that the presence of such persons had been noted at that time. The second day's objection was not to the playing of the tapes per se but that they should not be played *before the unauthorized persons,* who were then excluded from the courtroom. While we have discovered no cases which involve a similar situation in the wire tapping context, we find a sequestration case to be analogous. In *Collins v. State,* 10 Ga. App. 34 (1) (72 SE 526) (1911), it was held that the failure of the defendant and his attorney to call the attention of the court to the presence of a witness in the courtroom after the rule had been invoked was a waiver of the right to strict adherence to the rule. Such is the case here. It appears that appellants and their attorney were aware of the presence of unauthorized persons on the first day as evidenced by the objection on the *following day.* Having been overruled as to the general objection to the playing of the tapes, appellants should have, at that time, raised the presence of unauthorized persons. Thus, even though the publication to these individuals may not have been "reasonably necessary" within the meaning of Code Ann. § 26-3004 (k), it occurred because appellants waived, by their inaction — after having knowledge of the situation — their right to have the tapes published in a "reasonably necessary" manner. It is true that *Orkin v.*

*State,* 236 Ga. 176, 190, supra, speaks of "[a]dequate precautions" taken to secure the courtroom when tapes were played. However, it is clear from the Supreme Court's opinion in that case that the interceptees and their attorneys were *not* present during that publication so as to insure that no "unreasonable" publication occurred. Here, however, appellants and counsel *were* present, were aware of the situation and yet failed to properly object to the presence of others until the next day. Under these circumstances we adhere to our opinion that a knowing waiver occurred and appellants may not now urge as error a situation in which they acquiesced until such harm could not reasonably be corrected.

*Judgment affirmed. Deen, C. J., and Shulman, J., concur.*

ARGUED JULY 2, 1979 — DECIDED NOVEMBER 21, 1979 —

*Herbert Shafer, Herbert B. Zachry,* for appellants.
*Lewis R. Slaton, District Attorney, Joseph J. Drolet, H. Allen Moye, Assistant District Attorneys,* for appellee.