72189. VAN NICE et al. v. THE STATE.
72190. DUNCAN et al. v. THE STATE.
(348 SE2d 515)

BEASLEY, Judge.

In this interlocutory appeal defendants Mr. and Mrs. Duncan, Long, and brothers Delvin and David Van Nice challenge the denial of their motion to suppress wiretap evidence and motion to suppress other evidence alleged to have been seized illegally.

All defendants were charged with possession of marijuana and possession of a controlled substance, diazepam, found in an auto search. Mr. Duncan and Delvin Van Nice were also charged as recidivists. Mrs. Duncan faces additional charges relating to pills and a pistol found in her purse upon arrest: possession of controlled substances methaqualone, benzphetamine, and temazepam; possession of danger-

ous drugs doxipin and diphenhydramine; carrying a pistol without a permit; carrying a concealed weapon.

Suspecting Mr. Duncan of drug trafficking activities, the Georgia Bureau of Investigation obtained from the Georgia telephone company telephone toll records of the Duncans' home phone by securing subpoenas for the production of documentary evidence although there were no related hearings, cases or grand jury investigations pending before the issuing court. The subpoenas stated: "In lieu of an appearance in Court said records may be turned over to GBI Special Agent Brad Bonnell. As this investigation is still ongoing, it is requested that said subscribers not be informed about these records." The GBI also obtained Mr. Duncan's medical records regarding his hospitalization for a gunshot wound by subpoenaing them from a Tennessee hospital, although no related cases were pending.

The information gained from the subpoenas led to the issuance of a warrant for the wiretapping of the Duncans' home telephone. Agent Bonnell's affidavit in support of the warrant recited in part, "from the information concerning the telephone numbers of documented drug violators and the analysis of the telephone toll records for the instrument located in the residence occupied by Lawrence Duncan combined with the frequency and persons contacted . . . indicates that this particular phone is being utilized by Lawrence R. Duncan to further his criminal endeavors in the area of illegal drug trafficking . . . ." The affidavit also contained names of those suspected of criminal involvement with Duncan, including the names of two men who had died several years prior to the date of the affidavit.

The wiretap produced a conversation between Mr. Duncan and a man who identified himself as Raoul in which Raoul advised Duncan to go to Savannah on a specified date to pick up his "order," thought to be drugs. Investigators followed Duncan and his wife to Savannah where they observed the following contact with co-defendants Delvin and David Van Nice and Long: Mr. Duncan spoke to persons traveling in a green Cadillac owned by Long. Later the Duncans drove to a K-Mart store in their blue Lincoln where they parked near the green Cadillac. Mr. Duncan left the store with Delvin Van Nice, and Van Nice drove him in the Cadillac to a private residence. Van Nice entered the residence and returned to the Cadillac, where he had in his possession a small box. He then re-entered the home. Duncan and Van Nice left the residence and went back to the K-Mart where the other defendants had remained. When defendants were returning to their respective cars, the Duncans to the Lincoln, and Long and Delvin and David Van Nice to the Cadillac, all were arrested. A pistol and pills were found in Mrs. Duncan's purse. A warrant obtained for the search of the cars uncovered marijuana and diazepam in the Cadillac's trunk, money in the Lincoln's trunk, and a weapon in the glove

compartment.

*72189*

The appeal of defendants Delvin and David Van Nice and Long.

1. The Van Nices and Long assert that all evidence seized as a result of the wiretap must be suppressed since the wiretap was illegally issued based upon information gained through sham subpoenas and material misrepresentations by affiant.

They fail to specify whether they are asserting state or federal constitutional and/or state statutory claims. However, a review of the arguments on the motion to suppress and the cases cited on appeal reflect defendants are raising a federal Fourth Amendment argument as well as a state statutory (OCGA § 17-5-30) argument. See *State v. Camp*, 175 Ga. App. 591, 592-594 (1) (333 SE2d 896) (1985).

These defendants lack standing to challenge the legality of the wiretap. " 'Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted.' *Alderman v. United States*, 394 U. S. 165, 174 (89 SC 961, 22 LE2d 176) . . . 'Of course, Congress or state legislatures may extend the exclusionary rule and provide that illegally seized evidence is inadmissible against anyone for any purpose. But for [federal] constitutional purposes, . . . any petitioner would be entitled to the suppression of government evidence originating in electronic surveillance *violative of his own Fourth Amendment right* to be free of unreasonable searches and seizures. Such violation would occur [only] if (the state) unlawfully overheard conversations *of a petitioner himself* or conversations occurring on his premises . . .' [Cit.] . . . The only [Georgia] authority for a motion to suppress is Ga. Code § 27-313 [OCGA § 17-5-30], and under the provisions of that statute a pretrial motion to suppress is available only to the person aggrieved by an unlawful search and seizure. [Cit.]" *Romano v. State*, 162 Ga. App. 816, 819 (1) (292 SE2d 533) (1982). To be "aggrieved" under Georgia law, the violation must have occurred on the movants' premises or the unlawfully heard conversation must have been of the movants themselves in order to suppress the evidence. Id. Neither is the case here.

2. Challenging the admission of the marijuana and diazepam seized from the trunk of the Cadillac, defendants enumerate lack of probable cause to issue the search warrant. Once again it is unclear whether they raise a federal or state constitutional argument. A review of the argument below, however, reflects defendants base their enumeration upon the federal constitution. See *State v. Camp*, supra.

The affidavit in support of the warrant discussed the phone conversation in which Mr. Duncan was instructed to go to Savannah to pick up his order, the following of Duncan to Savannah, investigators'

observation of various contacts and interactions between Duncan and the Van Nices, and the use of the Cadillac by Mr. Duncan and Delvin Van Nice to go to the private residence. Included also was information that a GBI agent had observed a package transferred from the private residence to the Cadillac where it was placed in the vehicle "in such a way as to indicate that it was being concealed." Noted, too, was that suspected marijuana was observed on the car's front seat in plain view as were cigarette rolling papers, "item[s] of paraphernalia utilized in the consumption of controlled substances."

Even assuming that both Van Nices and Long have standing to contest the auto search, their enumeration fails. " 'A grudging or negative attitude by reviewing courts toward warrants' . . . is inconsistent with the Fourth Amendment . . . [S]o long as the magistrate had a 'substantial basis for . . . conclud[ing] that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more.' " *Illinois v. Gates*, 462 U. S. 213 (103 SC 2317, 76 LE2d 527, 547) (1983). "[R]eviewing courts . . . should apply a deferential standard of review in order to further the Fourth Amendment's strong preference for searches conducted pursuant to a warrant." *State v. Fultz*, 171 Ga. App. 886, 888 (321 SE2d 381) (1984). The affidavit in support of the warrant provided a substantial basis for concluding the auto contained evidence of wrongdoing. Accordingly, probable cause being sufficient, the trial court did not err in denying defendants' motion to suppress on this ground.

The fact that the affidavit recited that a GBI agent had observed the package transferred from the residence to the auto, where the agent's later statement was equivocal as to whether the transfer was from the house to the auto or vice versa, or whether the box originated and was left in the auto, is not fatal to the warrant. "Minor factual inaccuracies which are only peripherally relevant to the showing will not void the warrant where their presence in the affidavit is not such as to reflect on the credibility of the affiant." *Dresch v. State*, 125 Ga. App. 110, 112 (4) (186 SE2d 496) (1971). See also *Rugendorf v. United States*, 376 U. S. 528, 532 (84 SC 825, 11 LE2d 887) (1964).

3. Defendants' enumeration that probable cause was lacking to issue arrest warrants is meritless, first because there were no arrest warrants issued, and second, even if probable cause was absent at the time of their warrantless arrests, this is irrelevant to the motion to suppress at issue. As discussed in Division 2 of this opinion, there was probable cause to search the auto and a warrant was obtained, resulting in the seizure of the contraband.

*72190*

The appeal of Mr. and Mrs. Duncan.

1. The Duncans contend that the wiretap was illegal "in that the same was obtained through use of illegal, sham subpoenas issued in non-existent cases," and therefore all evidence obtained as a result is inadmissible under the U. S. Constitution's Fourth and Fourteenth Amendments, state statutes OCGA § 17-5-30 and OCGA § 16-11-67, and Ga. Const. 1983, Art. I, Sec. I, Par. XIII (former Ga. Const. 1976, Art. I, Sec. I, Par. X).[1]

a) The telephone toll records. Although the Duncans have general standing to attack the legality of the wiretap on their telephone, they lack the standing to assert that the illegality is due to the fact that telephone toll records were illegally obtained. "Like bank records, telephone toll and billing records are not owned or possessed by the defendant, but are business records belonging to the telephone company. *United States v. Baxter*, 492 F2d 150, 167 (9th Cir. 1973). *Katz v. United States*, 389 U. S. 347 (88 SC 507, 19 LE2d 576) (1967), urged by the defendants, recognizes the right of privacy in the contents of the telephone *conversation*, not in the toll and billing records of the telephone company. Thus, neither defendant . . . ha[s] standing to object to the production of these records by the telephone company . . . It follows that the trial court did not err in refusing to suppress them or in admitting them into evidence at the trial." *Kesler v. State*, 249 Ga. 462, 469-470 (5) (291 SE2d 497) (1982). Thus, defendants lack standing under the federal constitution to challenge the procedure by which the telephone records were obtained, and the warrant to tap which was subsequently issued.

Nor do defendants have standing under state statute OCGA § 17-5-30 to make such argument since they were not "aggrieved" by the seizure of the toll records because the records belong to the phone company. *Romano*, supra; *Kesler*, supra.

*Sacchinelli v. State*, 161 Ga. App. 763, 764 (288 SE2d 894) (1982), cited by defendants, which also involved sham subpoenas and a wiretap issued as a result of information gained, is inapposite to the case at bar because it involved the seizure of telephone conversation in which defendant had a privacy interest, not telephone toll records.

Defendants' argument that OCGA § 16-11-67 provides them with the relief they are seeking has been rejected in *Kesler*, supra, the court concluding that Code Ann. §§ 26-3001; 26-3007 [OCGA §§ 16-

---

[1] The Georgia Constitution is not supported by argument in defendants' original brief so it is not addressed. Defendants' attempt to preserve this argument by addressing it in their supplemental brief does not save it. *Bicknell v. Joyce Sportswear Co.*, 173 Ga. App. 897, 898 (3) (328 SE2d 564) (1985).

11-62; 16-11-67], while applicable to the content of telephone conversations, do not extend to include telephone company records.

As stated in *Romano*, supra at 819, "[t]he *only* [Georgia] authority for a motion to suppress is Ga. Code § 27-313 [OCGA § 17-5-30] (Emphasis supplied)." Thus defendants' remaining state statutory argument is without merit. With regard to defendants' federal Fourteenth Amendment due process/fundamental fairness argument, defendants have not cited, nor can we find, any authority for the proposition that they are entitled to relief on this basis on their motion to suppress. Thus, it is equally rejected. We decline to comply with defendants' request to "fashion a remedy," i.e., the suppression of evidence, for the misconduct which transpired.

b) Hospital records. The GBI agent's reference in his wiretap warrant affidavit to Mr. Duncan's hospitalization for a gunshot injury is insignificant in light of the other evidence set forth in the affidavit. The affidavit contained evidence from another source, a confidential informant, that Mr. Duncan had been shot as a result of his failure to pay for a shipment of marijuana. Thus, any evidence obtained through the hospital subpoena was merely cumulative. Moreover, even if the trial court omitted all gunshot references from consideration, there was a substantial basis for the court to conclude probable cause existed to issue the warrant. Any error was harmless to the issuance of the warrant.

2. The Duncans next allege that disclosures were made of information obtained from the wiretap in violation of OCGA § 16-11-64 (b) (8), to the Tennessee Bureau of Investigation, the GBI, the Dade County Sheriff's Office, the Georgia State Patrol, and law enforcement officials in Illinois and Kansas, thereby rendering the evidence disclosed inadmissible.

The statute invoked provides, "Any publication of the information or evidence obtained under a warrant issued hereunder [for interception of wire or oral transmissions by law enforcement] other than that necessary and essential to the preparation of and actual prosecution *for the crime specified in the warrant* shall be an unlawful invasion of privacy under this part and shall cause such evidence and information to be inadmissible in any criminal prosecution. [Emphasis supplied.]"

While acknowledging that 18 USC § 2517 specifically authorizes any investigative or law enforcement officer to "disclose such contents to another investigative or law enforcement officer to the extent that such disclosure is appropriate to the proper performance of the official duties of the officer making or receiving the disclosure," defendants argue that OCGA § 16-11-64 is more restrictive, limiting that which may be disclosed to that necessary and essential with regard to the prosecution for only that crime specified in the warrant. Here the

trial court entered court orders authorizing that the information be disclosed to spur or further investigation of other drug transactions involving Mr. Duncan and various associates. "We do not read the Georgia statutes as countermanding the specific authorization of the U. S. Congress." *Morrow v. State*, 147 Ga. App. 395, 399 (4) (249 SE2d 110) (1978).

" 'The construction to be given (Code Ann. § 26-3004 (k)) [OCGA § 16-11-64 (b) (8)] is rather what is reasonably necessary and essential to the preparation of and actual prosecution for a crime. What is reasonable will depend upon the facts of a given case and must necessarily rest in the controlled discretion of the district attorney, subject to review by the trial court. Where there is evidence to support the decision of a trial judge . . . that decision will not be disturbed on appeal. [Cits.]' " *Cox v. State*, 152 Ga. App. 453, 463 (3) (263 SE2d 238) (1979). This is true even where the information obtained broadens the scope of the pending investigation and gives probable cause to seek additional wiretaps and to intercept the conversations of additional parties. Id. Defendants' enumeration is therefore meritless.

3. The Duncans contend that all evidence from the wiretap must be excluded because, in addition to the authorized reel-to-reel recorder, investigating officers used a cassette recorder which was unauthorized by the warrant, violating OCGA § 16-11-64 (b) (1), (4), (6) & (7), and that in failing to return the cassette tapes to the warrant-issuing court, they also violated 18 USC 2518 (8) (a).

In *Little v. State*, 157 Ga. App. 462, 464-465 (5) (278 SE2d 17) (1981), defendants asserted state and federal violations in that police made duplicative cassette tapes without judicial authorization in addition to the reel-to-reel tapes, and later destroyed them also without judicial authorization. Noting the cassettes were made to facilitate transcription to a log and to enable the police to follow up on offenses that might be revealed, the court rejected the argument, reasoning, "Federal statute anticipates that such partial or duplicate tapes will be made and requires no prior judicial approval for duplication. 18 USC 2518 (8) (a) states in part: '. . . [d]uplicate recordings may be made for use or disclosure pursuant to the provisions of subsections (1) and (2) of Section 2517 of this chapter for investigations.' " Similarly, OCGA § 16-11-64 (b) does not prohibit the making of duplicate recordings. "The reel-to-reel original tapes were kept and returned to court and there is no requirement [state or federal] that the duplicate recordings be sealed or kept nor is their destruction prohibited when they have served their purpose." Id. at 465. Accordingly, we find no state or federal violation here.

4. Next argued is that the exclusion of all wiretap evidence is mandated because the court clerk published the wiretap documents in the minute book of Dade County, violating OCGA § 16-11-64 (b)

(5).

Although OCGA § 16-11-64 (b) (5) requires that the application for an investigation warrant and all supporting evidence in connection with it remain confidential and in the custody of the judge, disclosure is authorized "upon written order of the judge or . . . at the time of trial of the case in which such evidence is used or in which evidence derived from such surveillance is used." Here, the evidence reflects that the clerk placed the documents on the minute book on Saturday August 11, 1984 for certification for their use in the motion to suppress hearing on Monday August 13, 1984. Since the documents were needed, and subsequently introduced, at the motion to suppress hearing, and since there is no evidence that any unauthorized persons saw the material, and on August 13 at 9:00 a.m. they were locked up and soon placed in a safety deposit box, we find no violation. See *Cox v. State*, 152 Ga. App. 453, 466 (3) (263 SE2d 238) (1979).

The order of which defendants complain is still of record in the minute book, and not locked in the safety deposit box, includes no information about, or even any mention of, the existence of a wiretap. It simply provides that "certain records be filed with the Clerk of Superior Court" and that these records be kept in a safety deposit box.

5. Mr. and Mrs. Duncan assert that an unauthorized individual, an FBI agent, monitored phone conversations and that this constituted an illegal publication.

The warrant authorized only "[the] District Attorney of the Lookout Mountain Judicial Circuit, his Assistants or a law enforcement officer or agent under his direction and control permanently or temporarily" to participate in the wiretap. The Duncans argue that the FBI agent was not under the direction or control of the district attorney but rather fell under the control and supervision of his immediate supervisors at the bureau, the director of the bureau, and the United States Attorney.

The Duncans' position is tenuous at best. As the FBI agent was a law enforcement official aiding in the investigation at issue, he fell within the "direction and control" of the District Attorney language of the warrant.

6. Also alleged is that the affidavit in support of the wiretap warrant contained "material nontruths, and were based upon stale and unreliable information," thereby vitiating the probable cause for the search. Again it is not clear whether they are proceeding under the state or federal constitution. The enumeration fails in either event, as the standard is the same. See *Williams v. State*, 251 Ga. 749-796 (8bii) (312 SE2d 40) (1983). *Williams*, supra.

Nor do we conclude that the affidavit is stale. The latest information included was obtained within 5 days of the affidavit and issuance of the warrant and the information was "so near in point of time to

the making of the affidavit and execution of the search warrant 'as to create a reasonable belief that the same conditions described in the affidavit still prevailed at the time of the issuance of the warrant.' [Cit.]" *Kouder v. State*, 154 Ga. App. 597, 599 (2) (269 SE2d 92) (1980).

7. We have reviewed the remaining enumerations of error and find them to be totally without merit.

While affirming the denial of the motions to suppress in these cases as a matter of law, we must express displeasure with the undisputed fact that the law enforcement officers used bogus subpoenas in the furtherance of a criminal investigation.

When faced with instances of prosecutorial misconduct, the courts, federal and state, have repeatedly disapproved of such tactics — even in instances where suppression of evidence or reversal of conviction was not ordered. As early as 1954, in *Durbin v. United States*, 221 F2d 520 (D.C. Cir. 1954), the United States Court of Appeals found it inexcusable and clearly improper for the United States Attorney to use a subpoena to force the appearance of a witness at his office rather than before a grand jury. This same approach was taken in an analogous situation in *Katz v. United States*, 389 U. S. 347 (88 SC 507, 19 LE2d 576) (1967), where the United States Supreme Court reversed a conviction where electronic eavesdropping was carried out at a public telephone booth without a warrant. In discussing the investigative process used there, *Katz* at 357, stated: "[T]he Constitution requires 'that the deliberate, impartial judgment of a judicial officer . . . be interposed between the citizen and the police.' [Cit.] 'Over and again this Court has emphasized that the mandate of the [Fourth] Amendment requires adherence to judicial processes' [Cit.] . . ."

Appellee cites in support of the process used in the case-in-chief *Kesler v. State*, 249 Ga. 462, supra, and *Culpepper v. State*, 156 Ga. App. 331 (274 SE2d 616) (1980). However, the situations there are clearly distinguishable from the situation here, for those telephone records (*Kesler*) and bank records (*Culpepper*) were obtained through court order and not bogus subpoenas.

It is interesting to note that while the United States Supreme Court, in *United States v. Miller*, 425 U. S. 435 (96 SC 1619, 48 LE2d 71) (1976), in denying a motion to suppress, ruled that a bank depositor has no protectable Fourth Amendment interest in bank records obtained with defective subpoenas, it never approved of such a tactic as being a legitimate and court-sanctioned investigative procedure.

A review of cases in other states shows that in *State v. Eder*, 103 N.M. 211 (704 P2d 465) (1985), the Court of Appeals of New Mexico ordered the suppression of evidence where a bogus subpoena duces

tecum was used to obtain financial records. In doing so, the court directed our attention to 1 ABA, Standards for Criminal Justice, The Prosecution Function, 3-3.1 (d) (2d ed. 1980): "[I]t is unprofessional conduct for a prosecutor to secure the attendance of persons for interviews by use of any communication which has the appearance or color of a subpoena." *Eder* at 467, went on to say that "[t]he use of a subpoena or a document that looks like a subpoena for conducting pretrial interviews is unauthorized, improper, and a usurpation of judicial power."

This court, as recently as 1982, in *Sacchinelli v. State*, 161 Ga. App. 763, supra, while upholding the conviction in an illegal drug case, went to great lengths to state its clear and unmistakable aversion to the use of bogus subpoenas by law enforcement officers in the furtherance of a criminal investigation.

The above-mentioned cases repeatedly and forthrightly condemn prosecutorial misconduct. As a court we cannot on the one hand preach the virtues of obedience to law to the general public and at the same time wink at disobedience to law by law enforcement officers on the other hand.

In upholding the denial of the motions to suppress I can only take solace in the words of *Eder*, supra at 468, quoting from *United States v. Blue*, 384 U. S. 251, 255 (86 SC 1416, 16 LE2d 510) (1966): "[T]he barring of prosecution altogether in such a circumstance, 'might advance marginally some of the ends served by exclusionary rules, but it would also increase to an intolerable degree interference with the public interest in having the guilty brought to book.' "

*Judgments affirmed. Benham, J., concurs. Deen, P. J., concurs in the judgment only.*

DECIDED JULY 16, 1986 —
REHEARING DENIED JULY 31, 1986

*William O. Cox*, for appellants (case no. 72189).
*Noble L. Boykin, Jr., John Wright Jones*, for appellants (case no. 72190).
*Spencer Lawton, Jr., District Attorney, David T. Lock, Assistant District Attorney*, for appellee.