## 56234. MORROW et al. v. THE STATE.

QUILLIAN, Presiding Judge.

Dan C. Morrow and James Bert Williams were indicted in Fulton County for committing the offense of "Felony (Communicating Gambling Information)" on December 20, 1975. Defendant Williams was also indicted in Walton County for related offenses of "Commercial Gambling" for the dates of December 1 through December 15, 1975. Williams entered a plea of guilty to the Walton

County charges but now appeals his conviction of the Fulton County charge. *Held:*

1. Counsel for defendant Williams, like so many other appellate counsel, has not complied with Rule 18 (c)(1) of this court (Code Ann. § 24-3618 (c) (1)) which provides: "Sequence of argument [in appellate briefs]. The sequence of argument or arguments in the briefs shall follow generally the order of the enumeration of errors, and shall be numbered correspondingly."

Defendant enumerates nine errors but has only six divisions of argument in Part III of his brief. Further, the six divisions do not correspond to the enumerated errors, nor do the headnotes of the argument divisions correspond to the numbered enumerated errors.

This deficiency is not unimportant, for Rule 18 (c) (2) provides that any enumerated error which is not supported in the brief by citation of authority or argument shall be deemed to have been abandoned. It is not the duty of this court to search through this extensive (approximately 90 pages) but unpaginated brief to ascertain whether or not each and every enumerated error is argued or abandoned.

We numbered the defendant's brief for our own use. We have received a letter from defendant's counsel directing our attention to an error on "page 33" of his brief. Examination of pages 30 through 36 show no such error.

2. The first enumerated error contends it was error to deny the motion to suppress the wiretaps in Walton and Fulton Counties. However, Division 1 of Part III of the brief argues enumerated error 2 only. The first enumerated error cannot be found specifically argued in any division but inferentially could be based upon all the enumerated errors. Thus, we will not treat it as abandoned but will consider the motions to suppress as being based only upon those errors enumerated in the brief. However, we must first determine the merit of the remaining enumerated errors.

3. Defendant alleges "[t]he wiretap in Fulton County was spawned by, and the tainted fruit of the prior electronic surveillance in Walton County, which surveillance was illegal in its inception and execution . . ."

It is evident that the Walton County wiretap

provided the basis for issuance of the investigative warrant for the subsequent Fulton County wiretap, but we find no illegal taint to the fruit of the Walton wiretap. It is alleged that the "surveillance was illegal in its inception and execution . . ." We shall consider first the legality of the inception of the wiretap. The application for the investigatory warrant contains the requisites of Code Ann. § 26-3004 (c) (CCG § 26-3004 (c); Ga. L. 1968, pp. 1249, 1328; 1972, pp. 615, 952, 953) and 18 USC 2518 (1). The affidavit, based upon the information and participation of an informant, is a model of excellence. The description of the premises to be investigated was correctly and fully described. *Jones v. State* 126 Ga. App. 841, 842 (192 SE2d 171). The reason affiant concluded the confidential informant was reliable was spread upon the record. *Grebe v. State,* 125 Ga. App. 873, 875 (189 SE2d 698). The manner in which the informer obtained his information was detailed and explicit. *Sams v. State,* 121 Ga. App. 46 (172 SE2d 473). The dates upon which the informant's information was obtained were entered to show it was current — not stale. *Bell v. State,* 128 Ga. App. 426, 427 (196 SE2d 894). Further, these facts were then corroborated by observation of the premises and listening to the informant place bets with the suspects on the telephone. *Register v. State,* 124 Ga. App. 136, 139 (183 SE2d 68). Probable cause for issuance of the investigative warrant was clearly established. Accordingly, there is not the slightest taint to the legality of the inception of the Walton wiretap.

We turn now to the allegation that the "execution" of the wiretap rendered it illegal. Defendant contends the court "authorized an obtrusive intrusion for an impermissible period of time sans any judicial supervision . . ." The warrant authorized a period of 20 days for the wiretap. Code Ann. § 26-3004 (e), supra, permits periods of 20 days plus renewals for an additional 20-day period "for good cause shown." The affiant and the petitioner, the district attorney for that circuit, stated specific reasons for the "extent and scope" of the investigatory warrant. The petitioner wanted to determine the "total involvement" of the person investigated, and whether he was only one in a

"hierarchy" of a gambling enterprise, and because gambling offenses were of a "continuing nature" they desired to continue the wiretap throughout the entire period of 20 days and not discontinue the tap upon interception of one or more calls indicating gambling activity. An issue of length of time to continue a wiretap addresses itself to the sound discretion of the trial court and absent abuse of that discretion an appellate court will not interfere. See United States v. Daly, 535 F2d 434, 441 (8th Cir. 1976). We find no abuse of discretion in the issuance of the investigative warrant for a period of 20 days.

Defendant argues that the trial court failed to exercise "judicial supervision." He does not articulate in this division of argument, addressed to enumerated error 2, as to what the trial court failed to do, or for that matter — has not directed our attention to any statutory or decisional law that requires "judicial supervision" *during the period of the wiretap*. We find no requirement for the court to exercise personal supervision over the execution of the wiretap. See United States v. Daly, 535 F2d 434, supra, 442. He does have authority to require "reports to be made . . . showing what progress has been made toward achievement of the authorized objective and the need for continued interception." 18 USC 2518 (6). Whether or not these reports are required and the sufficiency of any report is discretionary with the trial court and may be dispensed with entirely. United States v. Falcone, 364 FSupp. 877, 888 (DC NJ 1973), affd. 500 F2d 1401; United States v. Iannelli, 477 F2d 999, 1002 (3d Cir. 1973), affd. 420 U. S. 770 (95 SC 1284, 43 LE2d 616).

Defendant could refer to the alleged lack of judicial supervision of the trial court over the tapes and the authorization papers *after* the wiretap terminated. However, any alleged deficiency in that regard would have no probative value in determination of the sufficiency of probable cause for the Fulton County wiretap because the information from the Walton County wiretap was released by the Walton County judge on December 11, 1975, *during* the Walton wiretap and could not possibly have contaminated the Fulton County wiretap where the alleged violation occurred *after* the

termination of the Walton wiretap on December 15, 1975. This enumeration is without merit.

4. Enumerated error 3 alleges the "post-tap secrecy provisions of § 26-3004 Ga. Code Annotated and § 2518 Title 18 U. S. Code, and the right of privacy secured to the Defendant under the 4th and 14th Amendments to the Constitution of the United States were flouted and denigrated during the Walton County tap."

This allegation is addressed in Division 2 of defendant's brief. As stated above, any alleged violations of law regarding the Walton County tap, occurring *after* termination of the wiretap has no effect upon the authorization of the Fulton County wiretap which was authorized *during* the Walton County wiretap. Neither could such alleged violations have any probative value in the Fulton County trial because those documents were not used in the trial of this case. Those alleged violations have relevance only to the Walton County trial of the defendant.

Defendant argues that it was improper "to disclose the evidence gathered in Walton County to the Fulton County Solicitor and his assistants." We do not agree. Title 18 USC 2517 specifically authorizes any investigative or law enforcement officer to "disclose such contents to another investigative officer to the extent that such disclosure is appropriate to the proper performance of the official duties of the officer making or receiving the disclosure." The release of the information by Walton County authorities to Fulton County authorities was authorized by court order (see Code Ann. § 26-3004 (h), supra) and was utilized to authorize the Fulton County wiretap. We do not read the Georgia statutes as countermanding the specific authorization of the U. S. Congress. This enumeration is meritless.

5. The fourth enumerated error rephrases substantially the same error as the third enumeration and is controlled adversely to the defendant by our holding in Division 4 above.

6. Defendant argues that there "was not special need or antecedent compelling justification" for the Fulton County wiretap. In essence, defendant contests the motive and reasons stated by the Fulton County

authorities to secure issuance of the investigative warrant. Defendant uses a "shotgun" approach in this enumeration. He contends there was "no necessity" for this wiretap, law enforcement officials had sufficient evidence for prosecution of offenders, allegation of a "hierarchy" was incorrect as evidence of the Walton County wiretap had revealed, and that it was false for the state to claim "normal investigative procedures have failed" for "none were tried."

Under 18 USC 2518 (5) "[n]o order entered under this section may authorize or approve the interception of any wire or oral communication for any period longer than is necessary to achieve the objective of the authorization, nor in any event longer than thirty days." In Division 3 above we held that determination of the length of time necessary to accomplish the stated objective of the law enforcement authorities was within the sound discretion of the judge. He determines whether the basis for the need for the wiretap complied with the statute. The application stated that normal investigative techniques had been used and such techniques were unlikely to be successful or too dangerous. This issue will be addressed more fully in the next division. Suffice it to say, our Supreme Court has held in determining whether the state failed to comply with "necessity" requirements of 18 USC 2518, the provisions of that section " 'must be read in a common sense fashion. They are "simply designed to assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime." United States v. Kahn, 1974, 415 U. S. 143, 153 n. 12, 94 SC 977, 983 n. 12, 39 LE2d 225, 236 n. 12.' " Lawson v. State, 236 Ga. 770, 771 (225 SE2d 258).

Defendant also argues that the Walton County wiretap had established his violation of Georgia gambling laws, and "there was no necessity to resort to any further surveillance — electronic or conventional — to make a case against [him] . . ." We are not prepared to hold that because one jurisdiction has knowledge of a defendant committing a substantial number of offenses within their jurisdiction that this precludes another jurisdiction within Georgia from continuing to investigate defendant's criminal activities within its jurisdiction

after that period of time. In United States v. Clerkley, 556 F2d 709, 714 (4th Cir. 1977 U.S. App. pend.) the court held: "While ample evidence may have been available to arrest and convict this foursome [named in the warrant], the government is not precluded from carrying the investigation further. In particular, the government has a valid interest in uncovering the names and locations of the various 'backers,' bookmakers, who regularly 'lay-off' bets and thereby supply the organization with capital."

In the instant case, the wiretap of the Walton County bookmaking operation revealed the Fulton County participation of the defendant Williams. Fulton County authorities wanted to know the extent and scope of his local gambling activities and whether or not he was a member of a larger organization. This could be accomplished only by a Fulton County wiretap of defendant's phone. We will not fault law enforcement authorities who permit illicit activity to continue where they have a valid reason — such as determining scope of gambling activities in the local area.

Furthermore, defendant has no basis for complaint. He was charged with one count of gambling in Fulton County on December 20, 1975. Perusal of his telephone log for that day, between the hours of 10:33 a.m. and 9:11 p.m. (Ten and one-half hours), reveals 113 telephone calls involving gambling activities. Of these possible 113 criminal violations — one was charged. We find no merit in this enumeration.

7. Defendant alleges that the affidavit and request for the investigative warrant by the Fulton County District Attorney "was misleading both by virtue of palpable misrepresentations, as well as by advertent omissions." He contends that in view of prior evidence obtained by the Walton County wiretap it was error to use such phrases as: "normal investigative procedures had failed; that normal investigative procedures appeared unlikely to succeed if tried; that normal investigative techniques would be of no avail due to the secrecy . . . that there was a hierarchy . . . that the scope of [defendant] Williams' activity could not be determined . . . [and] the only way to obtain evidence which could lead to a successful prosecution of the subject Williams" was by a

Fulton County wiretap.

The Georgia statute does not address the requisites for the application for an investigative warrant which is contained in 18 USC 2518 and provides, in part: "(1) Each application for an order authorizing or approving the interception of a wire or oral communication . . . shall include the following information: . . . (c) a full complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous . . . (3) Upon such application the judge may enter an ex parte order, as requested or as modified, authorizing or approving interception of wire or oral communications . . . if the judge determines on the basis of the facts submitted by the applicant that . . . (c) normal investigative procedures have been tried and have failed *or* reasonably appear to be unlikely to succeed if tried *or* to be too dangerous . . ." (Emphasis supplied.)

We note that the Fulton County request was made on a preprinted form, using stereotyped phrases parroted from 18 USC 2518, but the Supreme Court in *State v. Bilbo,* 240 Ga. 601, 602 (242 SE2d 21), specifically sanctioned their use and held that " 'the trial court was authorized to rely upon these representations.' "

The purpose of the requirement of exhaustion of normal investigative procedures is not to foreclose the use of electronic surveillance until the state has exhausted every possible means of obtaining evidence against a suspect, but merely to inform the authorizing official of the nature of investigative techniques tried — if any, *or* the difficulty *or* danger inherent in the use of such investigative methods. United States v. Lanza, 356 FSupp. 27, 30 (DC Fla. 1972); *State v. Bilbo,* 240 Ga. 601, 602, supra.

A close reading of the U. S. statute shows only that the application need state "whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." Then the judge determines from that information whether they "appear to be unlikely to succeed if tried or to be too dangerous . . ." The supporting affidavit in this instance corroborates the

preprinted conclusory allegation of the district attorney's application for the warrant and gives reasons why "normal investigative techniques would be of no avail," why attempts to use physical surveillance failed, why other investigative procedures would be "too dangerous," and why the affiant's experience had shown "sports betting is of a conspiratorial nature, of necessity, involving a hierarchy of individuals" and that the Fulton County wiretap was the only reasonable method to "determine the full extent of this conspiratorial organization." See United States v. Whitaker, 343 FSupp. 358, 362-363 (DC Pa. 1972) (U. S. cert. den.); United States v. Anderson, 542 F2d 420, 431 (7th Cir. 1976). Although the application may have been preprinted, inaccurate, and possibly misleading, the affidavit was explicit, comprehensive, and fully explanatory of the prior history of this case and the future need for the investigatory warrant. See United States v. Falcone, 364 FSupp. 877, supra; United States v. Kilgore, 524 F2d 957 (DC Fla. 1975). To warrant suppression of evidence derived from a wiretap it must be shown that *the affidavit* used as the basis for issuance of the investigative warrant was recklessly or intentionally untrue. United States v. Anderson, 542 F2d 428, 433 (7th Cir. 1976); United States v. Carmichael, 489 F2d 983, 988-989 (7th Cir. 1973). We find no such deficiencies in the instant case. Accordingly, this enumeration is without merit.

8. The seventh enumerated error has been discussed in Division 5 above and is repetitious, in part, of prior enumerated errors. The defendant contends the Walton County judge failed to exercise any judicial oversight and supervision over the wiretap, "thereby abnegating his responsibility to make sure that the minimization requirements and secrecy provisions of both State and Federal wiretap laws were complied with."

We have previously disposed of the allegations relating to the requirement for "judicial oversight" during the execution of the wiretap and also observed that any alleged violation of the secrecy provisions of the Walton County tapes occurred after the authorization of the Fulton County wiretap and had no retroactive effect upon the Fulton County authorization. However, the

alleged minimization violation could have occurred prior to the Fulton County authorization and we will address that issue here.

Subsection (5) of 18 USC 2518 provides, in part: "Every order and extension thereof shall contain a provision that the authorization to intercept . . . shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception . . ." The object of minimization is to prevent a wiretap — authorized only to intercept conversations dealing with one alleged type of criminal activity, from turning into an unconstitutional general search and wholesale invasion of privacy. United States v. King, 335 FSupp. 523, 541 (DC Cal. 1971), affd. in part, rev. in part on other grounds, 478 F2d 494, cert. den. 414 U. S. 846, sub nom. Light v. United States. Minimization means that intercept procedures should be conducted in such a way as to reduce to the smallest possible number, interceptions of communications which do not relate to the commission of the crime specified in the investigative warrant. United States v. Focarile, 340 FSupp. 1033, 1046 (DC Md. 1972); United States v. Askins, 351 FSupp. 408 (DC Md. 1972). There should be no greater invasion of privacy than is necessary under the circumstances. United States v. Falcone, 364 FSupp. 877, 885, supra. However, when Congress chose the term "minimize" they acknowledged that it was impossible to screen out all personal calls and some portions of nonpertinent calls would be intercepted. United States v. Sisca, 361 FSupp. 735, 746 (DC NY 1973). Monitoring agents must intercept portions of each call to determine whether it is of a personal nature or relates to the subject of the investigative warrant. Minimization is intended to prevent excessive invasions of privacy and to curtail the indiscriminate seizure of all privileged communications. United States v. Focarile, 340 FSupp. 1033, 1044, supra. The right of privacy, inherent in the Fourth Amendment, is not met by blanket interceptions of every call in its entirety. United States v. King, 335 FSupp. 523, 543, supra; United States v. Scott, 331 FSupp. 233, 248 (DC DC 1971). The minimization statute and judicial order would be meaningless if the investigative agent indiscriminately intercepts every

conversation from beginning to end, for the right of privacy guaranteed by the Fourth Amendment would then be illusory. United States v. Scott, 331 FSupp. 233, 248, supra.

In the instant case, because of the type of equipment used, whenever defendant's telephone was removed from the cradle, a register was activated in the room used by the police to monitor his telephone. The register would record the number dialed of an outgoing call. It could not determine the number of an incoming call. The register would also stamp out the time the call started and ended and activate a tape recorder which automatically transcribed all incoming and outgoing calls.

Approximately five persons were used to monitor defendant's telephone calls over the period authorized by the investigative warrant. Each monitoring officer did not utilize the same procedure in monitoring calls. All calls were monitored to determine if it was personal or related to gambling. If it was determined to be of a personal nature, each monitoring officer turned the recorder off or turned it so low that it would not record the conversation. At this juncture the procedure varied. Some of the detectives turned off their listening equipment or turned it so low they could not hear the conversation. Other monitoring officers turned their listening equipment so low they could not hear but would periodically turn the sound up so they could determine if the conversation remained personal or had changed to gambling. Some personal calls did change to the subject of gambling. If the conversation remained personal the sound was again turned down and there was no interception of the remaining conversation. However, at least one detective in the Walton wiretap and three detectives in the Fulton wiretap followed the procedure of turning off the tape recorder when it was determined that the call was personal but they listened to the full conversation of every personal call.

In effect the first two types of intercepts followed an acceptable procedure to minimize calls intercepted. The latter group intercepted all calls, innocent and illicit, but transcribed only the illicit. We acknowledge the difficulty faced by the monitoring officials in determining whether

a call was nonpertinent or personal. Gamblers speak a language that is endemic to that profession. The initiate monitor may be unsure of the type of call he has intercepted. The test we will apply is one which is contemporaneous with the call for we will not look back in retrospect and conclude, in the light of present information, that the call intercepted was personal as distinguished from relevant to the purpose of the intercept. United States v. Sisca, 361 FSupp. 735, supra.

We conclude that there are two types of violation of the minimization requirements. The first type would be the blanket intercept of the entire conversation of all calls and would be a blatant violation of the provisions of 18 USC 2518 (5) and the Fourth Amendment. United States v. Focarile, 340 FSupp. 1033, supra, 1046. The second type of violation would be committed if an inadequate method or effort were utilized to minimize intercepts of nonpertinent calls. We have the analogous situation of a search warrant which authorizes seizure of certain items and the executing officer seizes other evidentiary material. The United States Supreme Court has held that seizure of items not specified in a warrant does not result in suppression of those items validly seized even though the other items will be suppressed. Marron v. United States, 275 U. S. 192, 198-199 (48 SC 74, 72 LE 231). We face a similar situation here. The majority of the monitoring personnel followed an acceptable procedure in minimizing intercepts of nonpertinent calls. One person in the Walton wiretap did not. We do not find his intercept of a limited number of nonpertinent calls to contaminate those legally intercepted. United States v. Cox, 462 F2d 1293, 1301 (8th Cir. 1972) cert. den. 417 U. S. 918; United States v. Leta, 332 FSupp. 1357, 1360 (DC Pa. 1971); United States v. LaGorga, 336 FSupp. 190, 196-197 (DC Pa. 1971); United States v. Askins, 351 FSupp. 408, supra, 415; United States v. Sisca, 361 FSupp. 735, 745, supra, affd. 503 F2d 1337, cert. den. 419 U. S. 1008; United States v. Falcone, 364 FSupp. 877 (DC NJ 1973), affd. 500 F2d 1401.

What few personal calls were monitored in the Walton wiretap by this one individual was of a de minimis nature. United States v. Tortorello, 342 FSupp. 1029,

1038 (DC NY 1972), affd. 480 F2d 764, cert. den. 414 U. S. 866. Also, the United States Supreme Court has held that they did not "suggest [in United States v. Giordano, 416 U. S. 505 (94 SC 1850, 40 LE2d 341)] that *every failure to comply fully* with any requirement provided in Title III [of the Omnibus Crime Control and Safe Streets Act of 1968, 18 USC 2510, et seq.] would render the interception of wire and oral communications 'unlawful.' " (Emphasis supplied.) United States v. Chavez, 416 U. S. 562, 574 (94 SC 1849, 40 LE2d 380).

In its latest pronouncement on the issue of minimization in which "Government agents intercepted for a one-month period virtually all conversations over a particular telephone suspected of being used in furtherance of a conspiracy to import and distribute narcotics," the United States Supreme Court held: "The proper approach for evaluating compliance with the minimization requirement, like evaluation of all alleged violations of the Fourth Amendment, is objectively to assess the agent's or officer's actions in light of the facts and circumstances confronting him at the time without regard to his underlying intent or motive." Scott v. United States, 436 U. S. 128 (1) (98 SC 1717, 56 LE2d 168) (1978). Thus, the good motives of the monitoring officers are not relevant to this issue. The correct standard is "objective reasonableness without regard to the underlying intent or motivation of the officers involved." Id.

As in Scott v. United States, supra, where "virtually all conversations" were intercepted, and here where only a portion of nonpertinent calls were intercepted but not recorded, we have reviewed the evidence of record based upon the standard of "objective reasonableness" and find that the monitoring personnel substantially conducted the interception of defendant's calls so as to satisfactorily minimize interception of communications not subject to the investigative order. See also *Lawson v. State,* 236 Ga. 770, supra (3). We find this enumeration to be without merit.

9. Defendant enumerates as error denial of his motion of "Autrefois Convict" based upon his prior trial in Walton County. Under Code Ann. § 26-507 (a) (1) (CCG § 26-507 (a) (1); Ga. L. 1968, pp. 1249, 1267), prosecution is

barred "for the same crime, based upon the same material facts, if such former prosecution (1) resulted in . . . a conviction . . ." First, the offenses charged in Walton County are not the same crimes as the one charged in Fulton County. See *Pryor v. State,* 238 Ga. 698, 699-700 (234 SE2d 918). Second, the offenses are not based upon the same material facts. See *State v. Estevez,* 232 Ga. 316 (206 SE2d 475). The test is easy to apply. Would the facts introduced in this conviction have established those offenses charged in Walton County? The answer must be no. The dates of offenses committed in Walton County were from December 1, 1975 through December 15, 1975. The offense committed in Fulton County occurred on December 20, 1975. This enumeration is meritless. See generally 21 AmJur2d 239, Criminal Law, § 182; 22 CJS 693, Criminal Law, § 269.

10. The ninth enumerated error contends the state failed to comply with the "post-tap provisions" of the federal and state law. This enumeration is not one of the defendant's six divisions in Part III of his brief but is argued as part of Division II which refers to his enumerated error 3. Georgia Code Ann. § 26-3004 (f) (CCG § 26-3004 (f); Ga. L. 1968, pp. 1249, 1328; 1972, pp. 615, 952, 953) provides the officer executing the warrant must make a return which shall specifically show the officers employed, the devices used, and what was obtained.

We have examined the return made on the Fulton County wiretap. It could more accurately be described as a "log" (a record of performance) for it includes the date, time the call started and stopped, the number being called for outgoing calls, the person called or calling when it could be determined, and the officer making the entry. We find substantial conformance to the requirements of the law. Absent a clear showing of prejudice, failure to strictly comply with administrative requirements would not require suppression of wiretap evidence. United States v. Bohn, 508 F2d 1145, 1148 (8th Cir. 1975), cert. den. 421 U. S. 947. There was no showing of or claim of prejudice here. We find no error. United States v. Harrigan, 557 F2d 879, 884 (DC Mass. 1977).

11. Returning to the first enumerated error

concerning refusal of the trial court to suppress the wiretaps of Walton and Fulton Counties, for the reasons stated in Divisions 3 through 10 we have found no error which would require suppression of the Fulton County wiretap and the state used only the first portion of the Walton County wiretap which we found to be admissible as of the date of its use — in Division 3 above. Accordingly, this enumeration of error is also meritless.

*Judgment affirmed. Webb and McMurray, JJ., concur.*

ARGUED JULY 11, 1978 — DECIDED SEPTEMBER 12, 1978 — REHEARING DENIED OCTOBER 5, 1978 — 

*Herbert Shafer, Wesley R. Asinof,* for appellants.
*Lewis R. Slaton, District Attorney, Joseph J. Drolet, H. Allen Moye, Assistant District Attorneys,* for appellee.