39385. WALLER et al. v. THE STATE.

CLARKE, Justice.

Appellants and others were indicted and charged with violation of the Georgia Racketeer Influenced and Corrupt Organizations Act (OCGA § 16-14-1 et seq. (Code Ann. § 26-3401 et seq.)) and convicted of the offenses of commercial gambling and communicating gambling information. This appeal does not concern the sufficiency of the evidence except in regard to the question of venue.

The evidence at trial showed that appellants participated, with hundreds of others on a lower level, in a lottery ring which involved gambling on the volume of stocks and bonds traded on the New York Stock Exchange. The information was transmitted by telephone and telecopier and stored in a microcomputer maintained by appellant Cole.

(1) The basis of this court's jurisdiction is that appellant has made a facial attack on OCGA § 16-14-7 (f) (Code Ann. § 26-3405) of the forfeiture provision of the Georgia Racketeer Influenced and Corrupt Organizations Act (hereinafter RICO). The state argues that jurisdiction is not in this court because the constitutional challenge was not properly raised in the trial court and because appellants have no standing to raise the constitutionality of the forfeiture procedure since the evidence presented at trial was seized pursuant to search warrants. We find that the constitutional issue was properly raised at trial and that appellants have standing to raise it on appeal.

Appellants contend that the statute is unconstitutional because it authorizes seizure of "[a]ll property of every kind used or intended for use in the course of, derived from, or realized through a pattern of racketeering activity" prior to filing a complaint for a RICO in rem forfeiture proceeding and prior to the obtaining of a writ of seizure. Appellants insist that this statute is on its face violative of the Fourth Amendment to the United States Constitution.

We find that the provision in question, OCGA § 16-14-7 (f) (Code Ann. § 26-3405) is constitutional on its face. A seizure under this section is allowed only in carefully prescribed circumstances. The seizure must be incident to a lawful arrest, search or inspection, and the officer must have probable cause to believe that the property is subject to forfeiture or that the property will be lost or destroyed if not seized. There is no Fourth Amendment problem with the seizure or the fruits of a lawful search or inspection. The statute on its face provides that the search or inspection must be lawful. This requires that the search be pursuant to a warrant, incident to a lawful arrest, or in the presence of other exigent circumstances, which would render the search or inspection "lawful." By definition, therefore, the statute complies with the Fourth Amendment. For a discussion of exigent circumstances, see New York v. Belton, 453 U. S. 454 (101 SC 2860, 69 LE2d 768) (1981); Chimel v. California, 395 U. S. 752 (89 SC 2034, 23 LE2d 685) (1969); Warden v. Hayden, 387 U. S. 294 (87 SC 1642, 18 LE2d 782) (1967).

Seizure of contraband, evidence, or weapons not listed on a search warrant by an officer executing an arrest warrant or search warrant does not violate the due process clause of the Fourteenth Amendment even though there has been no notice and hearing. Calero-Toledo v. Pearson Yacht Leasing Co., 416 U. S. 663 (94 SC 2080, 40 LE2d 452) (1974). See also Fuentes v. Shevin, 407 U. S. 67 (92 SC 1983, 32 LE2d 556) (1972).

(2) The next question before us is whether the statute was applied in an unconstitutional manner as to appellants. According to appellants, officers acting under search warrants went far beyond the scope of the warrants in conducting general searches and seizing all manner of personal items including jewelry, letters, school report cards, unopened strong boxes and other items which were then sifted at leisure by the police in a search for evidence. Such items as were unlawfully seized were excluded from evidence at trial pursuant to a motion to suppress. It is appellants' contention that because certain property seized was outside the warrant, all of the evidence should have been suppressed. Appellants rely on Marron v. United States, 275 U. S. 192 (48 SC 74, 72 LE 231) (1927), United States v. LaVallee, 391 F2d 123 (2d Cir. 1968), and United States v. Pinero, 329 FSupp.

992 (S.D. N.Y. 1971), in support of their position. In Marron v. United States, the court held that under the Fourth Amendment a search warrant describing intoxicating liquors and articles for their manufacture did not authorize seizure of a ledger and bills of account. However, finding that the ledger and bills were seized incident to a lawful arrest, the court affirmed the appellant's conviction. In United States v. LaVallee and United States v. Pinero, the warrant did not describe the items at issue. Since the search was not conducted under any exception to the warrant requirement of the Fourth Amendment, the items not described in the warrant were suppressed. These cases stand for the rule that evidence improperly seized is inadmissible. There is no requirement that where evidence has been lawfully seized it must be suppressed if officers unlawfully seized other material, unless the unlawfully seized evidence led to the discovery of the evidence which was admitted.

(3) Appellants contend that their convictions should be overturned because the term of court at which they should have been tried under their demands for a speedy trial had expired. OCGA § 17-7-170 (b) (formerly Code Ann. § 27-1901) provides: "If the person is not tried when the demand is made or at the next succeeding regular court term thereafter, provided at both court terms there were juries impaneled and qualified to try him, he shall be absolutely discharged and acquitted of the offense charged in the indictment or accusation." For demand to cause the time to begin to run there must be a jury impaneled and qualified to try the defendant. *DeKrasner v. State,* 54 Ga. App. 41 (187 SE 402) (1936). Here the trial court found that there was no jury impaneled to try the case during the term in which appellants filed their demands. Consequently, the time allowed by the two-term trial requirement did not begin to run until the term following that during which the demand was filed. In the absence of clear and convincing evidence to the contrary, we will not disturb the trial court's finding that no jury qualified to try appellants was impaneled during the term in which the demand was filed. *Wilson v. State,* 156 Ga. App. 53 (274 SE2d 95) (1980). See also, *State v. McDonald,* 242 Ga. 487 (249 SE2d 212) (1978).

(4) In their next enumeration of error appellants complain that the trial court erred in ordering the courtroom closed during the hearing on the motion to suppress. Appellants insist that this constitutes a violation of their rights under our holding in *R. W. Page Corp. v. Lumpkin,* 249 Ga. 576 (292 SE2d 815) (1982). In the hearing here, information was revealed which was potentially harmful to others, would tend to violate the privacy of others, and might prejudice other potential defendants. Under these circumstances,

the court balanced appellants' rights to a public hearing on the motion against the privacy rights of others and closed the hearing. The court exercised its inherent power ". . . to preserve order and decorum in the courtroom, to protect the rights of parties and witnesses, and generally to further the administration of justice." *Lowe v. State,* 141 Ga. App. 433, 435 (233 SE2d 807) (1977). We find that appellants' Sixth Amendment right to a public trial was not violated. There is some question whether state or federal law would have required that the wiretap information be revealed only in a closed courtroom. OCGA § 16-11-64 (b) (8) (Code Ann. § 26-3004); 18 USCA § 2517. We need not reach this question since the thrust of appellants' argument is that the court failed to follow the procedure announced in *R. W. Page Corp. v. Lumpkin,* supra. This argument has no merit since the hearing in question occurred before that case was decided and before the procedural requirements set forth took effect.

(5) Appellants allege error in the admission of evidence gathered by electronic surveillance in counties other than Fulton County pursuant to warrants obtained in Fulton County and in the court's denial of appellants' motion to amend their motion to suppress to reflect facts in support of this allegation. Since we find that the amended motion to suppress was not timely made, we need not address the question whether the evidence should have been admitted. OCGA § 17-5-30 (former Code Ann. § 27-313) provides that a motion to suppress the fruits of an unlawful search and seizure shall be in writing and state facts showing that the search and seizure was unlawful. Although there is no time limit set out in the statute for the filing of a motion to suppress, the statute has been interpreted as requiring that the motion be made before the issue is joined. *Perryman v. State,* 149 Ga. App. 54 (253 SE2d 444) (1979); *State v. Shead,* 160 Ga. App. 260 (286 SE2d 767) (1981). We interpret this to mean before the defendant enters his written plea. Although not controlling here, the federal wiretap statute provides that a motion to suppress the fruits of an illegal wiretap be made ". . . before the trial, hearing, or proceeding unless there was no opportunity to make such motion or the person was not aware of the grounds of the motion." 18 USCA § 2518 (10) (a).

In the present case the trial judge, after hearing, specifically found that the amended motion was made after issue was formally joined and without any showing of good cause. We find no error in the court's refusal to grant the motion to amend.

(6) Appellants assert that certain evidence which the state discovered through electronic surveillance pursuant to OCGA § 16-11-64 (Code Ann. § 26-3004) should not have been admitted in

evidence because it had been disclosed to the Federal Bureau of Investigation, the Georgia Bureau of Investigation, the Organized Crime Prevention Council and the Internal Revenue Service. In support of this position, appellants point to OCGA § 16-11-64 (b) (8) (Code Ann. § 26-3004), which limits the state's right to publish information obtained under an electronic surveillance warrant "other than that necessary and essential to the preparation of and actual prosecution for the crime specified in the warrant. . . ." The section then mandates that should a prohibited publication occur, the published information may not be admitted into evidence.

The state counters with the argument that no violation occurred here. because federal law authorizes this type information be disclosed to other investigative or law enforcement officers to the extent that such disclosure is appropriate to the proper performance of the official duties of the officer making or receiving the disclosure. 18 USCA § 2517 (1). The state also cites *Morrow v. State,* 147 Ga. App. 395 (249 SE2d 110) (1978), cert. den. 440 U. S. 918 (1979), and *Cox v. State,* 152 Ga. App. 453 (263 SE2d 238) (1979). In these cases the Court of Appeals held that the disclosure of such information to other law enforcement officers does not cause the information and evidence to be inadmissible.

In the case before us, the disclosure of the information was specifically authorized by a court order which cited both the state and federal statutes and listed the agencies to whom the disclosure could be made. The import of the order is that the superior court judge entering the order concluded that the sharing of information between law enforcement agencies was in fact necessary and essential to the preparation and actual prosecution for the crime specified in the warrant. In view of the fact that this prosecution is for violations of the statute aimed at organized crime, it is reasonable to find that organized efforts of law enforcement agencies are essential and necessary. This finding is supported by the clear language of OCGA § 16-14-2 (b) (Code Ann. § 26-3401), which sets forth the intent of the General Assembly in enacting the RICO statute, to impose sanctions against "an interrelated pattern of criminal activity, the motive or effect of which is to derive pecuniary gain." Our interpretation of the General Assembly's intent to foster cooperation between law enforcement agencies as necessary to the prosecution of organized crime is further borne out by a recent amendment to the RICO statute authorizing reciprocal agreements with the chief prosecutors of any jurisdictions having substantially similar statutes. OCGA § 16-14-10 (b) (Code Ann. § 26-3409), Ga. L. 1982, p. 1385, § 12.

(7) Appellants' seventh, eighth, ninth, and tenth enumerations of error deal with appellants' claim that the state used straw

"co-defendants" as informants at trial in spite of appellants' written demand before arraignment that the state disclose such information. The conversations between investigative officers and the informants were recorded and reviewed by the trial judge, who found that the tapes corroborated the testimony of the officers that no defense tactics were revealed and that no prosecutorial misconduct occurred. As the state points out, the only relief sought by appellants was disclosure of the informants. At the time of the hearing on the motion to suppress, the state indicated that the names of the informants had been disclosed and that the informants had been shown no special treatment. While we share the trial court's concern that the police tactics used here could lead to abuse, we find no error in his conclusion that no abuse of appellants' rights occurred in this case.

(8) Appellants complain that sworn oral testimony outside the affidavit was considered by the magistrate who authorized the wiretap. There is no merit to this enumeration since the magistrate issuing the search warrant may consider sworn oral evidence outside the affidavit to establish probable cause. *Simmons v. State,* 233 Ga. 429 (211 SE2d 725) (1975); *Cox v. State,* 152 Ga. App., supra. See also 18 USCA § 2518 (2). We decline counsel's invitation, as did the Court of Appeals in *Cox,* supra, to adopt Rule 4 (c), F.R.Cr.P. which requires recordation of sworn oral testimony.

(9) The contention that the court erred in limiting cross-examination of witnesses in the hearing in the motion to suppress is without merit. As the United States Supreme Court noted in Aguilar v. Texas, 378 U. S. 108, 109, fn. 1 (84 SC 1509, 12 LE2d 723) (1964), "It is elementary that in passing on the validity of a warrant, the reviewing court may consider *only* information brought to the magistrate's attention." Although appellants also complain that the affiant was allowed to testify to the facts not in the affidavit, in fact, the record shows that affiant's testimony was limited to information presented to the magistrate.

(10) The trial court did not err in finding probable cause for the magistrate to issue the warrants despite certain mistakes of fact in the affidavit. There being sufficient information to support a finding of probable cause even discounting the mistaken information, the court did not err in finding that the affidavit was sufficient. Franks v. Delaware, 438 U. S. 154 (98 SC 2674, 57 LE2d 667) (1978).

(11) Following a recess in the suppression hearing a witness stated that before proceeding with his testimony he needed to clarify testimony given earlier. He stated that the review of his investigative report and his affidavit during the recess "cleared my mind." Defense counsel asked if the report were available, and the witness replied that it was not, that it was in the possession of the district attorney.

Defense counsel moved for production of the report, and the court denied the motion. Appellants argue that they were entitled to see the investigative report from which the witness refreshed his recollection.

The rule in Georgia is that even had the witness had the report before him on the stand, the defendant could not have procured the report as a matter of right simply by virtue of the fact that the witness used it to refresh his recollection. *Williams v. State,* 250 Ga. 664 (300 SE2d 685) (1983). "The defendant had no right to examine the witness' report which was used to refresh his memory and which was not in evidence." Id. at 665. See also *Jackson v. State,* 242 Ga. 692 (251 SE2d 282) (1978). It is true that this rule has been criticized as interfering with defendant's right to a thorough and sifting cross-examination. See dissent of Hill, C. J., *Williams v. State,* supra. However, in the present case, where the witness refreshes his recollection prior to taking the stand and has no notes in his possession, there can be no question that the state is under no greater compulsion to produce the report than if the witness had reviewed it before the trial began. In order for this report to be discoverable there must have been some reason other than the fact that it was reviewed by the witness.

(12) The enumeration of error regarding venue is deemed abandoned. Rules of the Supreme Court of the State of Georgia, Rule 45.

*Judgment affirmed. All the Justices concur, except Hill, C. J., and Smith, J., who dissent as to Division 3, Smith, J., who dissents as to Division 5, Smith and Weltner, JJ., who dissent as to Division 6, Hill, C. J., and Smith, J., who dissent as to Division 11. Gregory, J., concurs in the judgment and concurs specially in Division 11.*

DECIDED JUNE 1, 1983 —
REHEARING DENIED JUNE 28, 1983.

*Herbert Shafer, Charles R. Smith,* for appellants.
*Lewis R. Slaton, District Attorney, H. Allen Moye, Assistant District Attorney,* for appellee.

GREGORY, Justice, concurring specially.

I concur in the judgment in this case and specially in Division 11. Where a witness on the witness stand uses a writing or any other thing to refresh his recollection, it ought to be subject to examination by opposing counsel. See Chief Justice Hill's dissenting opinion in *Williams v. State,* 250 Ga. 664, 668 (300 SE2d 685) (1983). However,

where the writing or other thing is not available in the courtroom access by counsel must depend upon the rules of discovery.

HILL, Chief Justice, dissenting.

I dissent to Division three (3) of the majority opinion. See *State v. McDonald,* 242 Ga. 487, 489 (249 SE2d 212) (1978) (Hill, J., dissenting).

I also dissent to Division eleven (11). See *Williams v. State,* 250 Ga. 664, 668 (300 SE2d 685) (1983) (Hill, C. J., dissenting). There a minority of this court concluded that ". . . where a state's witness utilizes a report or other writing to refresh the witness' recollection, denying defense counsel the right to examine such writing constitutes a denial of the right of cross-examination." In my view, it makes no difference whether the witness uses the report to refresh his or her recollection while on the witness stand, or during a recess in the trial. The result is the same; the opposing party has been denied the right to a thorough and sifting cross-examination. This is particularly true where the district attorney shows the report to the witness, and the witness, with recollection thus refreshed, purports to "clarify" testimony given before the recess. The reference by the witness to the writing lends credibility to the "clarification," which opposing counsel is denied the opportunity to refute by reference to the writing. I therefore dissent.

I am authorized to state that Justice Smith joins in this dissent.