## S01A0946. PIMPER et al. v. STATE OF GEORGIA.

(555 SE2d 459)

SEARS, Presiding Justice.

On January 29, 2001, under the authority of the Georgia Racketeer Influenced and Corrupt Organizations (RICO) Act,[1] the Floyd County District Attorney filed a civil in personam forfeiture complaint against appellants David and Amy Pimper ("the Pimpers") and their wholly-owned corporations, D.L. Pimper Group, Inc., and Wall Street Creations, Ltd. ("the corporations"). This action was taken following investigations by both the Securities & Exchange Commission and the State. The State's complaint asserted appellants' involvement in theft, wire fraud, mail fraud, and violation of the Georgia Securities Act.[2] The complaint explained the basis for the superior court's exercise of jurisdiction, identified certain property to be forfeited, and gave detailed grounds for the forfeiture.[3]

Also on January 29, the District Attorney obtained an ex parte order from the superior court temporarily restraining appellants from transferring, concealing, assigning or disposing of all assets held in both individual and corporate capacities. Also acting ex parte, the trial court appointed a receiver and assigned him plenary powers to take immediate control of appellants' assets, books, and possessions; to assume sole control of the corporations; and to report to the court as to appellants' financial status. The ex parte hearing was not transcribed. However, at a subsequently-held hearing, the trial court made statements indicating that on January 29, it was presented with sufficient sworn testimony and other evidence to support its entry of the TRO and appointment of the receiver.[4]

Within 24 hours of entry of the trial court's orders, on January 30, 2001, a hearing was held before the superior court at which appellants were afforded an opportunity to be heard on whether the State's forfeiture action, the court's ex parte appointment of a receiver, and issuance of the TRO were improper. Appellants, however, declined to give testimony or submit any evidence before the trial court, stating that they were "unable to bring witnesses forward who are willing to testify and risk criminal prosecution themselves, or further investigation, or risk waiving their privilege against self-incrimination."

Six days later, on February 5, 2001, appellants filed a motion to dissolve the TRO and receivership order, alleging that the ex parte proceedings were improper. The following day, February 6, the supe-

---

[1] OCGA § 16-14-1 et seq.
[2] OCGA § 10-5-1 et seq.
[3] See OCGA § 16-14-7 (e).
[4] See *Caldwell v. State*, 253 Ga. 400-401 (321 SE2d 704) (1984).

rior court held a hearing on appellants' motion to dissolve, again affording appellants the opportunity to present testimony and other evidence to contest the State's civil forfeiture action. Once more, appellants offered neither sworn testimony nor evidence to the trial court. The superior court then scheduled a full evidentiary hearing on appellants' dissolution motion, to be held four days later. That hearing was delayed while appellants sought unsuccessfully to remove this matter to the federal court, and the full hearing was rescheduled for February 15, 2001. On February 13, the State notified appellants that as part of its forfeiture action, it was subpoenaing their sworn testimony and the production of documents. The next day, appellants agreed to indefinitely postpone any evidentiary hearing on their motion to dissolve the TRO and receivership due to an improper ex parte hearing. On February 19, 2001, no evidence having been submitted in support of appellants' motion to dissolve, the motion was denied based upon the pleadings. Appellants appealed that denial to this Court.

On February 21, 2001, the receiver reported to the trial court there were virtually no assets remaining in appellants' estates not already subject to the claims of secured creditors, many of which were asserted before the State's forfeiture action was filed. On February 22, 2001, an involuntary petition for bankruptcy was brought against one of the corporations, D.L. Pimper Group, Inc. On February 26, 2001, the other corporation, Wall Street Creations, Ltd., filed a voluntary petition for bankruptcy. On February 26 and 27, acting on the State's motion, the trial court entered orders dismissing the State's forfeiture action and the underlying TRO and receivership. The trial court reapproved its dismissal of the State's action on April 17, 2001.[5]

Thereafter, the receiver was automatically converted by operation of law into a Bankruptcy Court custodian, and thus became authorized to dispose of property in the two bankruptcy estates only in accordance with the directives of the Bankruptcy Court.[6]

On June 22, 2001, the grand jury returned a 75 count indictment

---

[5] Contrary to appellants' argument, the record reflects legitimate bases for the State's dismissal of its RICO action. The State's decision to dismiss was based primarily upon its discovery that the receivership estate was "both smaller and less liquid" than had been anticipated. This information was brought to light on February 21, when it was reported to the trial court that virtually no assets remained in the appellants' estates not already subject to secured claims. Two days later, the State informed the trial court that it no longer made sense to maintain the receivership, as appellants' poor financial condition rendered the receivership estate of no use in compensating the victims of appellants' purported fraudulent investment scheme. Three days later, on February 26, the State moved to dismiss its RICO action.

[6] See 11 USC §§ 101 (1) (A), 543 (a).

against David Pimper, alleging theft by deception,[7] unlawful securities practice,[8] false swearing,[9] and the making of false writings and statements.[10] On August 1, 2001, following a briefing and hearing, the Bankruptcy Court approved payment of the custodian's fees. Thereafter, the Bankruptcy Court custodian determined that $2,493.72 he had held since February 2001 was the personal property of the Pimpers, and did not belong to the estate of either of the two corporations in bankruptcy proceedings. On August 23, 2001, the Bankruptcy Court custodian sent a check in the amount of $2,493.72 to the Pimpers and their counsel. The Pimpers' counsel refused to accept the check from the Bankruptcy Court custodian. It is undisputed by the record that after the $2,493.72 was returned to the Pimpers, none of their personal assets are being held by the State as part of the now-defunct receivership. On September 26, 2001, the Bankruptcy Court custodian filed his final accountings of the estates of the two bankrupt corporations.

Insofar as this appeal concerns the bankrupt corporations, it rests within the exclusive jurisdiction of the Bankruptcy Court and is subject to the mandatory automatic stay provisions of the United States Bankruptcy Code.[11] Therefore, this appeal must be dismissed with regard to the corporations.[12]

Insofar as this appeal concerns the Pimpers in their individual capacities, it is moot. An appeal is moot when it seeks to determine an issue which, if resolved, cannot have any practical effect on the underlying controversy,[13] or when such resolution will determine only abstract questions not arising upon existing facts or rights.[14] The Pimpers appealed to this Court complaining that the receivership and TRO should be dissolved. Such dissolution occurred when the State's RICO action was dismissed in February 2001, more than six months ago. While the statutory procedures for wrapping up a receivership may not have yet been completed, it is undisputed by the record that the receivership no longer exists and currently holds no assets belonging to the Pimpers in their individual capacity.

Thus, the record shows that appellants have obtained the relief they sought in the superior court — dissolution — and the State no longer exercises dominion over their personal assets. Any resolution

---

[7] OCGA § 16-8-3.
[8] OCGA § 10-5-12.
[9] OCGA § 16-10-71.
[10] OCGA § 16-10-20.
[11] 11 USC § 362; *Straton v. New*, 283 U. S. 318, 320-321 (51 SC 465, 75 LE 1060) (1931).
[12] Id.; 11 USC § 362.
[13] Black's Law Dictionary, p. 909 (5th ed. 1979); see *Brown v. Spann*, 271 Ga. 495, 496 (520 SE2d 909) (1999).
[14] Id.

of the issues raised in appellant's appeal will not have a practical effect on an underlying case or controversy, and would merely address such issues in the abstract. It follows that the appeal, insofar as it concerns the Pimpers in their individual capacity, is moot. It is, of course, well established that mootness is one of the grounds for dismissal of appeals set forth in OCGA § 5-6-48 (b).

The dissent raises well-grounded concerns regarding the constitutional ramifications of an in personam RICO forfeiture action such as the one brought in this appeal, and urges that because these constitutional issues might recur and yet evade review, this appeal should not be dismissed as moot. However, this Court is without jurisdiction to consider the constitutional issues raised by the dissent, because the issues were not ruled upon by the trial judge after having been raised in the trial court.[15]

In conclusion, this Court may not exercise jurisdiction over that portion of this appeal that is now within the exclusive jurisdiction of the Bankruptcy Court, and all remaining issues are moot. Therefore, the appeal is dismissed in its entirety.

*Dismissed. All the Justices concur, except Fletcher, C. J., and Hunstein, J., who dissent.*

HUNSTEIN, Justice, dissenting.

This appeal stems from an in personam RICO forfeiture complaint the Floyd County District Attorney filed against David and Amy Pimper and two corporations. The in personam nature of the complaint is incontrovertible, given the style of the complaint[16] and the recital within the complaint specifying that it was brought pursuant to OCGA § 16-14-7 (m),[17] the provision in the RICO forfeiture statute which authorizes in personam forfeitures. I have grave reservations regarding the use of in personam forfeiture proceedings in a case where, as here, none of the defendants had been convicted of or even indicted for any criminal racketeering activity.[18] The use of in

---

[15] *Alexander v. State*, 239 Ga. 810 (239 SE2d 18) (1977) (The Supreme Court will not pass upon the constitutionality of a statute unless it clearly appears that the point was properly raised in the trial court and was the subject matter of a ruling by the trial judge). Moreover, the unique circumstances that led to the dissolution of the receivership in this appeal, and which form the basis of our dismissal, do not demonstrate that the issues raised by the dissent are likely to evade review, should they arise in future cases.

[16] Naming individuals as defendants rather than designating specified property as defendant establishes that a proceeding is in personam rather than in rem. See *Cuellar v. State*, 230 Ga. App. 203 (496 SE2d 282) (1998).

[17] In addition to OCGA § 16-14-7 (m), the complaint recites that it was brought pursuant to OCGA § 16-14-9, which provides that the "application of one civil remedy under this chapter shall not preclude the application of any other remedy, civil or criminal."

[18] According to representations in the State's brief, David Pimper, alone among the former defendants, was indicted by the State on various RICO-related criminal charges four months *after* the dismissal of the forfeiture proceedings in issue here.

personam forfeiture under such circumstances raises serious concerns of constitutional dimension which I believe this Court must address and resolve.

Unlike civil in rem forfeitures, which are based on the legal fiction "that the property itself is 'guilty' of the offense," *Austin v. United States*, 509 U. S. 602, 615 (113 SC 2801, 125 LE2d 488) (1993), in personam forfeitures are criminal proceedings that serve to "punish the property owner's criminal conduct." Id. at 624 (Scalia, J., concurring).[19] See also *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U. S. 663, 684 (94 SC 2080, 40 LE2d 452) (1974). In contrast, in rem forfeitures are regarded as civil in nature because the forfeiture is based upon the unlawful use of the property, irrespective of the property owner's culpability. See *United States v. Gilbert*, 244 F3d 888, 919 (11th Cir. 2001); *United States v. Seifuddin*, 820 F2d 1074, 1076-1077 (9th Cir. 1987). See also *Thorp v. State*, 264 Ga. 712 (2) (450 SE2d 416) (1994) (statutory in rem forfeitures look to whether property has been "tainted" by unlawful use).[20] The critical distinction between in personam and in rem proceedings is also reflected in statutory law: the Federal RICO statute, 18 USC § 1963, and most criminal in personam forfeiture statutes in other jurisdictions mandate that criminal liability be established *before* the individual defendant's property can be forfeited. See id. at (e) ("[u]pon conviction of a person under this section, the court shall enter a judgment of forfeiture of the property"); *Libretti v. United States*, 516 U. S. 29, 38-39 (116 SC 356, 133 LE2d 271) (1995) (forfeiture is an element of the sentence imposed following conviction or a guilty plea). See also, e.g., Cal. Penal Code § 186.3 (a); Conn. Gen. Stat. Ann. § 53-397 (a), (b) (1); Fla. Stat. Ann. § 895.05 (2) (a); Idaho Code § 18-7804 (i); 725 Ill. Comp. Stat. Ann. § 175/5 (a); Minn. Stat. Ann. § 609.905; Nev. Rev. Stat. Ann. § 207.450; N. J. Stat. Ann. 2C:41-3; Ohio Rev. Code Ann. § 2923.32 (B) (3); Okla. Stat. Ann. 22 § 1405 (A); Tenn. Code Ann.

---

[19] For a history of the deodand and the development of forfeiture law, see *Austin v. United States*, supra, 509 U. S. at 611 (III); *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U. S. 663 (III) (94 SC 2080, 40 LE2d 452) (1974). See also Piety, Scorched Earth: How the Expansion of Civil Forfeiture Doctrine Has Laid Waste to Due Process, 45 U. Miami L. Rev. 911 (II) (1991).

[20] Although *Murphy v. State*, 267 Ga. 120 (475 SE2d 907) (1996), in dicta indicates that in personam forfeiture proceedings under OCGA § 16-13-49 (drug act forfeitures) are civil actions, citing id. at (p) (4), this conclusion is erroneous. Subsection (p) (4) merely reflects that innocent third parties who have an interest in property involved in an in personam forfeiture proceeding may intervene in the proceeding by utilizing the relevant provisions in the Civil Practice Act. None of the other authority cited by *Murphy* supports its holding regarding the "civil" nature of in personam forfeiture proceedings and reliance upon *Murphy* for this holding is accordingly misplaced. See, e.g., *Cuellar v. State*, supra, 230 Ga. App. 203; *Rojas v. State*, 226 Ga. App. 688, 689 (487 SE2d 455) (1997).

§ 39-12-206 (j).[21]

Because of the criminal nature of in personam forfeitures, there are serious constitutional ramifications when in personam proceedings are initiated against individuals who have not been indicted or convicted of any criminal activity. Self-incrimination concerns are directly implicated. See, e.g., Guerra, Between a Rock and Hard Place: Accommodating the Fifth Amendment Privilege in Civil Forfeiture Cases, 15 Ga. State Univ. L. Rev. 555 (1999); Blum, Self-Incrimination, Preclusion, Practical Effect and Prejudice to Plaintiffs: The Faulty Vision of SEC v. Graystone Nash, Inc., 61 Brooklyn L. Rev. 275 (1995).[22] In personam forfeiture defendants face admitting or denying their personal involvement in the commission of racketeering activities when they file an answer to allegations in the State's complaint.[23] Other potential incriminating situations arise with the use of pre-trial discovery, such as the subpoenas issued by the State in this case to obtain the defendants' sworn testimony, and hearings on motions where, as here, the trial court's rulings are based on whether or not the defendants provided testimony to rebut the State's racketeering allegations. Constitutional search and seizure issues may also arise, especially in cases like this one where the alleged racketeering activity involved complex financial transactions, and the State uses the forfeiture proceedings to conduct a wholesale review of the defendants' papers, accounts, and other documents, sidestepping established constitutional procedures and pro-

---

[21] While some jurisdictions allow the prosecuting attorney to obtain court orders that preserve the status of the property prior to indictment and conviction, the forfeiture is not completed until after conviction. E.g., Conn. Gen. Stat. Ann. § 53-398 (a); Minn. Stat. Ann. § 609.907. Compare N.Y. CPLR § 1311 (1) (b) (expressly authorizing pre-conviction in personam forfeiture proceedings). Some states limit this pre-indictment seizure to a period not exceeding 90 days unless good cause or a subsequent indictment is shown. Nev. Rev. Stat. Ann. § 207.440 (3) (b); R. I. Gen. Laws § 7-15-3.1 (b). Many jurisdictions require a special verdict to be returned by the jury regarding forfeiture proceedings. E.g., Cal. Penal Code § 186.5 (c); Mich. Stat. Ann. § 750.159j (5), (7); Nev. Rev. Stat. Ann. § 207.440 (3); Okla. Stat. Ann. 22 § 1405 (B) (1); Ohio Rev. Code Ann. § 2923.32 (B) (4).

[22] While self-incrimination problems also arise in in rem forfeiture proceedings, because the proceeding is against the property the owner may elect not to file an answer at all, see, e.g., OCGA §§ 16-14-7 (h) (1), 16-13-49 (n) (3), or may answer, contest the property's alleged guilt and prove the property is untainted without testifying or otherwise necessarily providing incriminating evidence.

[23] The case at bar serves as an example. The unindicted, preconviction defendants in this case were called upon to respond to numerous allegations regarding specified false representations the complaint claimed the defendants had made to clients regarding the "sophisticated account analyses" the corporate defendants performed as well as allegations that the defendants "unlawfully and through a pattern of racketeering activity . . . acquired and maintained, directly and indirectly, interest in and control of various enterprises, real property, personal property, and money in violation of OCGA § 16-14-4 (a)," with the complaint setting forth six predicate acts in violation of various State and Federal laws which the complaint asserted constituted a "pattern of racketeering activity" by the defendants under the Georgia RICO Act.

tections regarding such searches and seizures. See Hyman, When Rules Collide: Procedural Intersection and the Rule of Law, 71 Tul. L. Rev. 1389 (II) (1997); Nelson, Should the Ranch Go Free Because the Constable Blundered? Gaining Compliance with Search and Seizure Standards in the Age of Asset Forfeiture, 80 Calif. L. Rev. 1309 (1992). Compare *Waller v. State*, 251 Ga. 124 (1) (303 SE2d 437) (1983) (addressing constitutionality of statutory procedures involved in in rem RICO forfeiture seizures under OCGA § 16-14-7 (f)). The constitutional ramifications explain why the State is sadly mistaken when it asserts that any difference between the use of in personam and in rem forfeitures is "irrelevant."[24]

Georgia's in personam RICO forfeiture statutory scheme does not alleviate these concerns. OCGA § 16-14-7 (m), which contains the entirety of Georgia's in personam RICO forfeiture provisions, consists solely of the following sentence:

> In lieu of the provisions of subsections (c) through (g) of this Code section [the in rem proceedings], the state may bring an in personam action for the forfeiture of any property subject to forfeiture under subsection (a) of this Code section.

Subsection (m) clearly does not contain any procedural safeguards within its meager provisions. Moreover, it does not even incorporate the procedural safeguards set forth in the in rem RICO forfeiture proceedings, such as subsections (e) and (f) discussed in *Waller*, supra. To the contrary, it expressly states that in personam actions operate "in lieu of" those provisions. Compare OCGA § 16-13-49 (p) (setting forth minimal procedural safeguards for in personam forfeitures under the drug act). But see *Caldwell v. State*, 253 Ga. 400 (321 SE2d 704) (1984) (RICO forfeiture action arguably brought in personam assessed under statutory in rem procedural standards). The "amorphous and chameleon-like" nature of Georgia's RICO statute, which has been compared to "an obscure iceberg, the dim outline of its base extending seemingly forever under the waters of Georgia criminal jurisprudence," has been urged as the reason for reassessment of "the need for and effectiveness of the [Georgia RICO] in furthering the crime-fighting policies of Georgia." Kenny and Smith, A Comprehensive Analysis of Georgia RICO, 9 Ga. St. U. L. Rev. 537, 583 (1993).

In the case at bar, the Floyd County District Attorney filed an in personam forfeiture action against the Pimpers and their two corpo-

---

[24] The State's original position, as set forth in its briefs in this Court, was that the proceedings were in rem. The State corrected this error in a supplemental brief, filed September 28, 2001, but "notes that [the error is] not relevant to the merits of the case."

rations on January 29, 2001. That same day the State, without notice to the defendants or giving them an opportunity to be heard, obtained ex parte orders which allowed the State to seize all of the defendants' assets and place them into the hands of a court-appointed receiver. After the defendants' bank accounts were frozen and their assets, personal records and financial documents were seized, the Floyd County District Attorney announced at a press conference on January 30 that a criminal investigation into the defendants' business activities was being initiated. The defendants immediately challenged the proceedings but under the trial court's rulings, the only way they could dissolve the receivership and recover their assets was to provide sworn testimony addressing the racketeering activities they were alleged by the complaint to have personally committed, activities which were the subject matter of pending criminal investigations. In the meanwhile, the receiver withdrew over $100,000 of the defendants' seized assets to pay his expenses. The defendants filed a notice of appeal on February 19, 2001, which is the same date the written order was entered on the trial court's earlier (February 6) oral ruling denying the defendants' motion to dissolve the receivership. Less than a week thereafter, one corporate defendant was forced into involuntary bankruptcy and the other was allowed to file voluntarily. The State dismissed the forfeiture proceedings against all of the defendants even though the individual defendants, who were not affected by the bankruptcy filings, were demanding an accounting from the receiver, in order to obtain an explanation for the receiver's claim that the Pimpers' individual assets seized by the receiver amounted to less than $2,500 upon the dissolution of the receivership. It is uncontroverted that no such accounting has been rendered regarding the Pimpers' individual assets.[25] The State then challenged the appeal in this Court on the basis of "mootness."

Georgia's RICO Act has been criticized as "simply an affront to the most fundamental notions of justice." Kenny and Smith, supra, 9 Ga. St. U. L. Rev. at 583. That criticism is borne out by the Floyd County District Attorney's decision to bring an in personam criminal forfeiture proceeding against unindicted, preconviction individuals pursuant to a statute which contains absolutely no procedural safeguards to protect the constitutional rights of the defendants. The coercive effect of that choice of proceeding placed the defendants in a

---

[25] The filing of the final report and accounting in the bankruptcy court regarding the estates of the two corporate defendants has no relevancy to the demand made by the Pimpers for an accounting of their individual assets. A receiver has a duty to keep his accounts in a regular manner and "to be always ready with them supported by proper vouchers." OCGA § 10-6-30.

Catch-22 situation whereby they could obtain the return of their seized property only by providing potentially incriminating testimony for the State to use against them in an on-going criminal investigation. The State thereafter compounded the dubious nature of these proceedings by its legal maneuver in dismissing the action once appellate review was sought and then moving this Court to dismiss the appeal as moot. While the State asserts that it has acted in the utmost good faith throughout these proceedings, both its decision to initiate in personam criminal forfeiture proceedings against these unindicted, unconvicted defendants and to dismiss the proceedings once the defendants sought appellate review thereof raises serious concerns about the validity of the State's actions which can only be resolved by reaching the issues on their merits.

I strongly disagree with the majority opinion that we can avoid addressing the matters raised by this appeal by dismissing it as moot even though the challenges against the receiver raised by the Pimpers in their individual capacities remain viable for resolution by this Court. Although the State urges that the Pimpers are entitled to nothing more than a remand to the trial court for the receiver to submit his final report,[26] I find that their enumerations challenging the receiver's actions call into question a justiciable issue directly before this Court, namely, whether an in personam forfeiture proceeding against unindicted preconviction defendants is void from its inception. The other issues implicated by this appeal, including the potentially unconstitutional effect of in personam proceedings on the rights of unindicted, preconviction defendants, present questions capable of repetition and yet evading review through the simple expediency of the State repeating its behavior in this case by dismissing the proceedings after appellate review is sought. See generally *Collins v. Lombard Corp.*, 270 Ga. 120 (1) (508 SE2d 653) (1998). Accordingly, because I cannot join with the majority in exonerating the State from all review of its actions in this case and would instead reach and resolve the issues on the merits, I must respectfully dissent to the majority opinion.

I am authorized to state that Chief Justice Fletcher joins in this dissent.

---

[26] I find no merit in the State's argument that individuals targeted by in personam forfeiture proceedings have any adequate remedy to challenge the State's action outside an appeal in the forfeiture proceeding itself. See *Kelleher v. State of Ga.*, 187 Ga. App. 64 (1) (369 SE2d 341) (1988) (claim against State for malicious criminal prosecution based on unfounded in rem forfeiture proceeding barred by sovereign immunity). Likewise, the State's argument that forfeiture defendants may bring actions for malicious prosecution would not avail a defendant like Amy Pimper who has not been indicted. See *Sizemore Security Intl. v. Lee*, 161 Ga. App. 332 (1) (287 SE2d 782) (1982) (prosecution for criminal offense essential element of malicious prosecution claim).

DECIDED NOVEMBER 19, 2001 —
RECONSIDERATION DENIED DECEMBER 14, 2001.
RICO, etc. Floyd Superior Court. Before Judge Walther.

*Brinson, Askew, Berry, Seigler, Richardson & Davis, Robert M. Brinson, C. King Askew, J. Anderson Davis, Mark M. J. Webb, Alston & Bird, Theodore J. Sawicki, John H. Goselin II, Craig H. Kuglar, Cook, Noell, Tolley, Bates & Michael, Edward D. Tolley*, for appellant.

*Fred R. Simpson, Acting District Attorney, Thurbert E. Baker, Attorney General, David S. McLaughlin, Assistant Attorney General, Ekonomou, Atkinson & Lambros, Michael G. Lambros, Morris, Manning & Martin, Lewis E. Hassett, Smith, Price & Wright, Stephen D. Smith, Jr., Edward Hine, Jr., Bondurant, Mixson & Elmore, John E. Floyd, William Q. Bird*, for appellee.